## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LEAH CROSS,

    951 Black Maple Dr.

    Loveland, CO 80538

        *Plaintiff*,

      v.

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

    131 M St. NE

    Washington, D.C. 20507,

and

ANDREA LUCAS, in her official capacity
as Acting Chair of the Equal Employment
Opportunity Commission,

    131 M St. NE

    Washington, D.C. 20507,

        *Defendants.*

Case No. 25-3702

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

## INTRODUCTION

1.      The Equal Employment Opportunity Commission (EEOC) was created by Congress to enforce the bedrock anti-discrimination protections for workers in Title VII of the Civil Rights Act of 1964. Title VII tasks the EEOC with receiving charges alleging unlawful employment practices based on race, color, religion, sex, and national origin, and mandates that the EEOC "shall make an investigation" of such charges. 42 U.S.C. § 2000e-5(b). Likewise, the Age Discrimination in Employment Act (ADEA) requires that, when the EEOC receives a charge alleging age discrimination against an individual age 40 or older, it "shall promptly seek to

eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(d)(2). Such conciliation procedures are also required for Title VII charges where the EEOC determines, following its mandatory investigation, that there is reasonable cause to believe that discrimination occurred.

2.      Since soon after its inception, the EEOC has recognized that unlawful discrimination can occur when a neutral policy or practice has an adverse impact based on a protected trait like race or sex, a type of discrimination known as disparate-impact discrimination.

3.      In a series of cases dating back to the 1970s, the U.S. Supreme Court has consistently affirmed that Title VII prohibits disparate-impact discrimination. In 1991, Congress amended Title VII to codify disparate-impact liability, leaving no doubt that employment practices that cause a disparate impact based on race, color, religion, sex, or national origin are unlawful employment practices that fall within the EEOC's enforcement obligations.

4.      The Supreme Court has also recognized disparate-impact liability under the ADEA, pointing to parallel language between that statute and Title VII. Consistent with this interpretation, the EEOC has issued regulations providing that the ADEA prohibits facially neutral employment practices that have an adverse impact on individuals based on age.

5.      But despite disparate-impact discrimination being unlawful under Title VII and the ADEA, and despite the statutory mandates that the EEOC "shall" investigate and conciliate charges of discrimination, on September 15, 2025, the EEOC issued a memorandum ("the Disparate Impact Rule"), directing EEOC field offices to administratively close, by September 30, 2025, all investigations of Title VII and ADEA charges alleging disparate-impact discrimination. The rule also prohibits the EEOC from facilitating the resolution of any disparate-impact charge through conciliation.

6.      The Disparate Impact Rule denies workers like Plaintiff Leah Cross their statutory right to an EEOC investigation and conciliation process.

7.      Ms. Cross filed a class-based charge of discrimination against her former employer, Amazon.com, Inc. ("Amazon"), alleging that Amazon's policy of denying delivery drivers bathroom breaks had a disparate impact based on sex. The EEOC began to investigate her charge, but it abruptly ended the investigation and administratively closed her charge on September 29, 2025 under the Disparate Impact Rule.

8.      As a result, Ms. Cross was denied the benefits of a full EEOC investigation, which could have uncovered helpful evidence; was prevented from receiving a determination by the EEOC as to whether there was reasonable cause to believe discrimination occurred; and was unable to benefit from an EEOC-facilitated conciliation process that she would have received if there were a determination of reasonable cause. Instead, she has been forced to immediately prepare her claims for filing in court, which she must do within 90 days of the administrative closure of the EEOC's investigation into her charge.

9.      The Disparate Impact Rule, and the EEOC's subsequent closure of Ms. Cross's charge and other disparate-impact charges, directly contradict the EEOC's statutory mandate under Title VII to investigate all charges of discrimination within its jurisdiction and its statutory mandate under the ADEA to attempt conciliation of all charges it receives.

10.     The Disparate Impact Rule is also arbitrary and capricious because it abruptly ends the EEOC's longstanding enforcement of laws prohibiting disparate-impact discrimination without any reasonable explanation and without considering the interests of those who have relied on the EEOC's consistent practice of investigating and conciliating disparate-impact claims for the last 60 years.

11.     Further, the EEOC has exceeded its statutory authority by issuing the Disparate Impact Rule because it is a substantive rule that has significant legal consequences for Ms. Cross and other workers, and Congress authorized the EEOC to issue only "procedural" rules under Title VII.

12.     Finally, even if the EEOC could issue this substantive rule, it failed to follow the required procedures to do so: it enacted the Disparate Impact Rule without a quorum, without a vote of the Commissioners, and without notice and comment.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under federal law, including the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.*

14.     Venue is proper in this district under 28 U.S.C. § 1391(e)(1) because Defendant EEOC resides in and has its headquarters in this district, and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

15.     Plaintiff Leah Cross is an individual and a resident of Colorado. She filed a class-based charge of discrimination with the Colorado Civil Rights Division on May 22, 2023 that was transferred to the EEOC's Denver Field Office on January 4, 2024, and then was dismissed on September 29, 2025 pursuant to the EEOC's Disparate Impact Rule.

16.     Defendant EEOC is a federal agency with its headquarters at 131 M Street NE, Washington, DC 20507.

17.     Defendant Andrea Lucas is Acting Chair of the EEOC. She is sued in her official capacity.

## FACTUAL ALLEGATIONS

**I.    The EEOC Has a Statutory Obligation to Investigate Complaints of Discrimination**

18.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, outlawed employment discrimination on the basis of race, color, religion, sex, or national origin and established the Equal Employment Opportunity Commission, *id.* § 2000e-4(a), which is "empowered . . . to prevent any person from engaging in any unlawful employment practice as set forth in" the Act, *id.* § 2000e-5(a).

19.    The EEOC is also responsible for enforcing laws other than Title VII, including the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq*.

20.    One significant way the EEOC enforces these laws is by investigating charges of discrimination alleging unlawful employment practices. 42 U.S.C. § 2000e-5(b); 29 U.S.C. § 626(a).

21.    Although workers have a private right of action under Title VII and the ADEA, they may not exercise that right without first filing a charge of discrimination with the EEOC. 42 U.S.C. § 2000e-5(f)(1); 29 U.S.C. § 626(d)(1).

22.    Under Title VII, proceedings before the EEOC begin when "a charge is filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission." 42 U.S.C. § 2000e-5(b).

23.    When the EEOC receives such a charge, Title VII requires the agency to serve notice of the charge on the respondent employer, and then provides that the EEOC "*shall* make an investigation thereof." 42 U.S.C. § 2000e-5(b) (emphasis added).

24.     "[T]he purpose of" an EEOC investigation "is to determine whether there is reason[able cause] to believe "th[e] allegations [of the charge] are true." *EEOC v. Shell Oil Co.*, 466 U.S. 54, 71 (1984).

25.     In conducting an investigation, the EEOC usually first requests a position statement from the employer, encouraging the employer to raise any factual or legal defenses it may have. The EEOC may also issue a request for information that asks the employer to submit documents, including personnel policies, the charging party's personnel files, personnel files of other individuals, and other relevant data and information.[1]

26.     The EEOC typically allows the charging party to submit a written rebuttal to the employer's position statement, and it may also request additional information or documents from the charging party. *See* 29 C.F.R. § 1601.15(b).

27.     After that, the EEOC may interview witnesses, collect additional documents, and/or conduct an on-site visit at the employer's premises. It "may require a fact-finding conference with the parties," which is "an investigative forum intended to define the issues, to determine which elements are undisputed, to resolve those issues that can be resolved and to ascertain whether there is a basis for negotiated settlement of the charge." 29 C.F.R. § 1601.15(c).

28.     If an employer or a witness refuses to cooperate with the investigation, the EEOC may subpoena witnesses and evidence, 29 C.F.R. § 1601.16, and it can compel witnesses to attend hearings, 29 C.F.R. § 1601.17.

29.     "[A]fter such investigation," the Commission can take one of two steps. First, it can decide "that there is not reasonable cause to believe the charge is true" and dismiss the charge. 42

---

[1] *See* EEOC, *What You Can Expect After a Charge is Filed*, https://perma.cc/8JNX-GGYK; EEOC, *What You Can Expect After You File a Charge*, https://perma.cc/8V78-TWCS.

U.S.C. § 2000e-5(b). Second, it can decide "that there is reasonable cause to believe that the charge is true," in which case it "*shall* endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Id.* (emphasis added). If those efforts at conciliation are unsuccessful, "the Commission may bring a civil action." *Id.* § 2000e-5(f)(1).

30.     If the charge is dismissed or the Commission decides not to bring its own action, it must notify the charging party of their right to sue, and the charging party has 90 days from receiving that notice to file suit in court. 42 U.S.C. § 2000e-5(f)(1); *Mack v. WP Co., LLC*, 923 F. Supp. 2d 294, 298 (D.D.C. 2013).

31.     Before the 90-day period ends, the charging party can request that the EEOC provide them with a copy of their charge file, which may contain evidence and information obtained by the EEOC during its investigation.[2]

32.     Though Title VII requires the EEOC to investigate every charge, the EEOC has promulgated a regulation allowing a charge of discrimination under Title VII to be dismissed before the completion of the investigation and without making a determination regarding reasonable cause, "[w]here a charge on its face, or as amplified by the statements of the person claiming to be aggrieved discloses, or where after investigation the Commission determines, that the charge and every portion thereof is not timely filed, or otherwise fails to state a claim under Title VII." 29 C.F.R. § 1601.18(a).

---

[2] *See* EEOC, *Questions and Answers: FOIA Requests for Charge Files*, https://perma.cc/M6R9-WLZ8.

33.     These early dismissals are referred to as "administrative closures," and, in addition to untimeliness, can occur for reasons such as "insufficient number of employees, or lack of employment relationship."[3]

34.     Additionally, a charge may be administratively closed if the charging party voluntarily withdraws the charge or, once 180 days elapses from the filing of the charge, the charging party requests a Notice of Right to Sue so that they can proceed with their claims in court. 42 U.S.C. § 2000e-5(f)(1).

35.     A charge may also be dismissed if, through the EEOC mediation process or otherwise, the parties agree to a negotiated settlement. 29 C.F.R. § 1601.20.

36.     The EEOC's obligations are similar with respect to the ADEA, but there are several key differences. First, the ADEA requires conciliation for all charges, not only those where the EEOC has made a reasonable cause finding. It provides that, upon receiving a charge of discrimination under the ADEA, "the Commission *shall* . . . promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(d)(2). Second, there is no corresponding regulation providing that the EEOC can administratively close charges that fail to state a claim under the ADEA.

## II.    Title VII and the ADEA Provide for Disparate-Impact Liability

37.     In addition to protecting workers from intentional discrimination (referred to as "disparate treatment"), statutes enforced by the EEOC also prohibit disparate-impact discrimination, which is when a facially neutral policy has a disproportionate effect based on a protected characteristic like national origin, race, religion, or age.

---

[3] EEOC, *Definitions of Terms*, https://perma.cc/B8ZA-YQGM.

38.     Disparate-impact claims are an important tool that workers can use to hold employers accountable when they adopt unjustified policies or practices that disadvantage a particular group but where there is insufficient evidence to prove intentional discrimination.

39.     The EEOC first recognized disparate impact as a cognizable theory of discrimination under Title VII as early as 1966, when it established its first guidelines on employment testing procedures, stating that employment tests must validly measure ability to perform the job in question lest they unintentionally perpetuate barriers to opportunity rooted in historical discrimination and unequal access to education.[4]

40.     In 1971, the U.S. Supreme Court held in *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971), that an employer could be liable for discrimination under Title VII for adopting a policy that has a discriminatory effect and is not related to job performance, even when there is an "absence of discriminatory intent." *Id.* at 432.

41.     *Griggs* was grounded in the plain text of the provision of Title VII that makes it unlawful to "limit, segregate, or classify" employees or applicants "in any way which would . . . tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(2).

42.     In 1991, Congress explicitly codified the Supreme Court's and the EEOC's longstanding recognition of a disparate-impact theory of discrimination under Title VII into the statutory text. The Civil Rights Act of 1991 explained how a worker could establish "[a]n unlawful employment practice based on disparate impact." Civil Rights Act of 1991, Pub. L. No. 102-166, § 105, 105 Stat. 1071, 1074–75 (codified at 42 U.S.C. § 2000e-2(k)).

---

[4] EEOC, *EEOC History, 1964 – 1969*, https://www.eeoc.gov/history/eeoc-history-1964-1969.

43.    As with Title VII, the EEOC has had a long history of recognizing disparate-impact liability under the ADEA. It first offered guidance on that topic in 1981, just three years after taking over enforcement of the ADEA from the Department of Labor. *See* Final Interpretations: Age Discrimination in Employment Act, 46 Fed. Reg. 47,724, 47,725 (Sept. 29, 1981).

44.    The EEOC's current regulations, most recently amended in 2012, explain that "[a]ny employment practice that adversely affects individuals within the protected age group on the basis of older age is discriminatory unless the practice is justified by a 'reasonable factor other than age.'" 29 C.F.R. § 1625.7(c).

45.    In *Smith v. City of Jackson,* 544 U.S. 228 (2005), the Supreme Court applied *Griggs* to hold that, because the ADEA uses parallel language to Title VII, it also prohibits disparate-impact discrimination. *See id.* at 233.

46.    The EEOC has consistently recognized disparate-impact discrimination as a cognizable theory of discrimination in both its law enforcement and advisory roles. For example, in 1970, the EEOC issued Uniform Guidelines on Employee Selection Procedures, 35 Fed. Reg. 12,333 (Aug. 1, 1970), which are now codified at 29 C.F.R. § 1607.1 *et seq*. Those guidelines explain that the EEOC will consider to be discriminatory "[t]he use of any selection procedure which has an adverse impact on the hiring, promotion, or other employment or membership opportunities of members of any race, sex, or ethnic group" unless that selection procedure meets the detailed criteria in the guidelines. *Id.* § 1607.3.

47.    The EEOC has also issued guidance on the use of criminal background screenings in employment applications, including a discussion of potential disparate-impact liability. In that guidance, the EEOC explains that, "[w]ith respect to criminal records, there is Title VII disparate impact liability where the evidence shows that a covered employer's criminal record screening

policy or practice disproportionately screens out a Title VII-protected group and the employer does not demonstrate that the policy or practice is job related for the positions in question and consistent with business necessity."[5]

48.     Most recently, the EEOC issued technical assistance describing how reliance on algorithmic software and artificial intelligence in the job application process can expose employers to a risk of disparate-impact liability.[6]

49.     The EEOC has also litigated numerous disparate-impact cases. For example, it has brought cases challenging employers' use of physical abilities tests as adversely impacting women.[7]

### III.    The EEOC's Disparate Impact Rule Directs Employees to Administratively Close Charges that Allege Disparate-Impact Discrimination

50.     In April 2025, President Trump issued Executive Order 14281, "Restoring Equality of Opportunity and Meritocracy." 90 Fed. Reg. 17,537 (April 28, 2025). This executive order criticized the concept of disparate-impact liability as "divisive" and instructed agencies to "deprioritize enforcement of all statutes and regulations to the extent they include disparate-impact liability." *Id.* at 17,537–38. It also directed the Chair of the EEOC to assess, within 45 days, "all pending investigations, civil suits, or positions taken in ongoing matters under every Federal civil

---

[5]             (2012), https://perma.cc/38H3-BY5W.
[6] EEOC, *Select Issues: Assessing Adverse Impact in Software, Algorithms, and Artificial Intelligence Used in Employment Selection Procedures Under Title VII of the Civil Rights Act of 1964* (2023), https://tinyurl.com/mr35znt7. This technical assistance document is no longer available on the EEOC's website, and links to its previous location yield a "page not found" error message.
[7] EEOC, *EEOC Sues CSX Transportation for Company-Wide Sex Discrimination* (Aug. 2, 2017), https://perma.cc/4QPC-GVL8; EEOC, *Walmart, Inc. to Pay $20 Million to Settle EEOC Nationwide Hiring Discrimination Case*, JD Supra (Sept. 14, 2020), https://perma.cc/9BM2-YCJ5.

rights law . . . that rely on a theory of disparate-impact liability" and to "take appropriate action with respect to such matters consistent with the policy" of the executive order. *Id.*

51.     The executive order noted that it "shall be implemented consistent with applicable law." *Id.* at 17,539.

52.     In response to the executive order, the EEOC took several actions to back away from its longstanding commitment to pursuing disparate-impact claims. For example, it sought to dismiss a lawsuit it had filed the year before alleging that the Sheetz convenience store chain maintained an inflexible criminal background screening policy that adversely impacted Black, multiracial, and indigenous job applicants.[8] It also sent a memorandum to state and local agencies with whom it partners in the investigation of employment discrimination, informing them that it would no longer pay those agencies the customary fee for any disparate-impact charges they investigate.[9]

53.     On September 15, 2025, the EEOC issued the Disparate Impact Rule through its Office of Field Programs. The Disparate Impact Rule provides a clear directive to end the EEOC's investigation of disparate-impact charges: "By no later than COB September 30, 2025, every pending charge of discrimination premised solely on disparate impact liability shall be administratively closed."

54.     The Disparate Impact Rule states that the policy of Executive Order 14281 is "to eliminate the use of disparate-impact liability in all contexts to the maximum degree possible" and

---

[8] Alexandra Olson & Claire Savage, *EEOC Files to Drop Sheetz Discrimination Case, Citing Trump's Order*, Associated Press (June 7, 2025), https://perma.cc/3XTP-BZRW.
[9] Niko Gallogly, *E.E.O.C. Tells State Regulators It Won't Back Some Discrimination Claims*, N.Y. Times (May 27, 2025), https://perma.cc/9C9X-G33X.

to "deprioritize enforcement of all statutes and regulations to the extent they include disparate-impact liability, including but not limited to 42 U.S.C. 2000e-2." (emphasis deleted).

55.    The Disparate Impact Rule states that, pursuant to the executive order, the EEOC "is not commencing, developing, or continuing to pursue litigation advancing disparate impact causes of action."

56.    The Disparate Impact Rule then directs that, to comply with the Executive Order, "every pending charge of discrimination premised solely on disparate impact liability shall be **administratively closed** by issuing a Notice of Right to Sue and identifying 'other' as the reason for the closure, unless a no cause finding can be determined by **October 31, 2025**, in which case the investigation can be closed by issuing a Notice of Right to Sue with a no cause finding."

57.    Additionally, where a charge of discrimination alleges both disparate-impact discrimination and disparate-treatment discrimination, the Disparate Impact Rule provides that only the disparate-treatment claim, and not the disparate-impact claim, can be investigated.

58.    Finally, the Disparate Impact Rule states unequivocally that the "EEOC cannot facilitate the resolution of a pending charge of discrimination that is premised solely on disparate impact liability through conciliation."

59.    When the EEOC issued the Disparate Impact Rule by memorandum in September of 2025, it had only two Commissioners, which does not constitute a quorum.

## IV.    The Disparate Impact Rule Adversely Affected Workers with Disparate-Impact Claims

60.    The effect of the Disparate Impact Rule is consistent with its purpose: to deny workers with disparate-impact claims their statutory right to the EEOC's investigation and conciliation process.

61.     Not only is that process a statutory right, but it is essential to workers' ability to vindicate their rights to be free from discrimination in the workplace.

62.     The EEOC process allows workers who suspect their employer has discriminated against them to file a charge even if they do not yet have the evidence necessary to survive a motion to dismiss in court. As the Supreme Court has explained, "a charge of employment discrimination is not the equivalent of a complaint initiating a lawsuit. The function of a Title VII charge, rather, is to place the EEOC on notice that someone (either a party claiming to be aggrieved or a Commissioner) believes that an employer has violated the title. The EEOC then undertakes an investigation into the complainant's allegations of discrimination." *Shell Oil Co.*, 466 U.S. at 68.

63.     The EEOC investigation also enables the worker to obtain information from the employer that may prove that discrimination did occur, allowing the worker to pursue a lawsuit with a stronger evidentiary basis. Conversely, if an investigation reveals no discrimination, the worker can save the resources they would have expended on a meritless lawsuit. In addition, the EEOC may attempt to resolve the dispute through informal methods of conciliation before the case escalates to a lawsuit, saving both parties time and money.

64.     The EEOC investigation is especially important in disparate-impact cases, where a worker may suspect that a policy has a discriminatory effect but lack the statistical evidence needed to prove it in court. The EEOC, either by requesting information or through its subpoena power, can obtain the necessary data for both the EEOC and the worker to assess whether a disparate impact exists and to identify which employer practice may be causing it. The EEOC process also informs the worker of the employer's defenses to disparate-impact liability, including the employer's explanation for why, in the case of Title VII, a policy is job-related and consistent with business necessity or, under the ADEA, why a policy is based on a reasonable factor other than

age. By ending investigation and conciliation of EEOC charges alleging disparate-impact discrimination, the Disparate Impact Rule denies workers those important opportunities.

65.     The Disparate Impact Rule's abrupt closure of charges of discrimination has a more practical effect, too: It starts the 90-day clock running for workers to file their claims in court. For example, workers who just filed their charges and expected the investigation to take at least 180 days are now forced to scramble to file in court without having received any of the benefits the EEOC process was supposed to provide.

## V.    The EEOC Dismissed Ms. Cross's Charge Pursuant to the Disparate Impact Rule

66.     In May 2023, Ms. Cross filed a charge of discrimination with the Colorado Civil Rights Division (CCRD), alleging sex-based disparate-impact discrimination under Colorado law and Title VII.

67.     Ms. Cross's charge, filed on behalf of herself and a class of female drivers, asserted that Amazon's delivery quotas and surveillance of drivers force drivers to go long periods without using a bathroom or to urinate inside the delivery vehicle. The charge further alleged that this policy has an adverse impact on female drivers, who cannot urinate in bottles inside the vehicle as easily as drivers with male anatomy and who find it more difficult to go long periods of time without access to a bathroom because of menstruation needs.

68.     Under a work-sharing agreement between the EEOC and CCRD, this charge was automatically dual-filed with the EEOC, which took responsibility for investigating the charge.

69.     As part of the EEOC investigation, Amazon filed a short position statement, and Ms. Cross provided a rebuttal to the position statement.

70.     On December 4, 2024, the EEOC contacted Ms. Cross, stating that it was "very interested in moving forward with Ms. Cross's case," and requested an interview with Ms. Cross, which was conducted on January 14, 2025.

71.     On September 24, 2025, Ms. Cross's counsel spoke on the phone with the investigator assigned to Ms. Cross's charge, who informed counsel that Ms. Cross's charge was about to be administratively closed pursuant to the Disparate Impact Rule. The investigator explained that the EEOC could either administratively close the charge and issue a right-to-sue notice, or Ms. Cross could withdraw the charge and request a right-to-sue notice.

72.     On September 29, 2025, counsel for Ms. Cross informed the investigator that Ms. Cross would not be withdrawing her charge, and Ms. Cross filed a letter requesting that the EEOC reconsider its decision to dismiss her charge given that disparate impact is a well-recognized theory of liability under Title VII and the EEOC is required to investigate all charges of discrimination.

73.     Later that same day, a dismissal and right-to-sue notice was placed in Ms. Cross's online file. The notice stated that the closure was "administrative[]" and that it did "not reflect a determination on the merits." The notice warned that Ms. Cross must file suit within 90 days to preserve her right to bring a claim under Title VII.

74.     When her case was dismissed, Ms. Cross had not received any documents or data from Amazon as part of the EEOC's investigation into her charge of discrimination.

75.     As a result of the Disparate Impact Rule, Ms. Cross is now forced to file her claims in court within 90 days and has been denied the benefit of a full investigation, including access to data on the impact of Amazon's policies on other female drivers.

**CLAIMS FOR RELIEF**

**Count One**

**Violation of the Administrative Procedure Act—5 U.S.C. § 706(2)(A)**
**Contrary to law**

76.     Plaintiff restates and realleges all paragraphs above.

77.     Under the APA, a court shall "hold unlawful and set aside agency action . . . found to be . . . not in accordance with law." 5 U.S.C. § 706(2)(A).

78.     Title VII requires that, when the EEOC receives a charge of discrimination, it investigate the charge to determine whether there is reasonable cause to believe that the charge is true. If it does have reasonable cause to believe that the charge is true, Title VII requires that the EEOC endeavor to eliminate any unlawful employment practices by informal methods of conference, conciliation, and persuasion. 42 U.S.C. § 2000e-5(b).

79.     Title VII does not authorize the EEOC to selectively exclude categories of discrimination from the charge-investigation process.

80.     The ADEA requires the EEOC to attempt to conciliate all charges of discrimination filed with the agency and does not allow the EEOC to dismiss charges without attempting conciliation or to exclude categories of discrimination from the conciliation process.

81.     By directing in the Disparate Impact Rule that staff can no longer investigate or conciliate disparate-impact claims, regardless of their individual merits, the Disparate Impact Rule violates Title VII's requirement that the EEOC investigate all charges of discrimination and the ADEA's requirement that the EEOC conciliate all charges of discrimination. The Disparate Impact Rule is thus contrary to law.

**Count Two**

**Violation of the Administrative Procedure Act—5 U.S.C. § 706(2)(A)**
**Arbitrary and capricious**

82.     Plaintiff restates and realleges all paragraphs above.

83. Under the APA, a court shall "hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

84. The EEOC did not provide any reasonable explanation for adopting the Disparate Impact Rule.

85. Additionally, the Disparate Impact Rule represents an abrupt about-face by the EEOC, which has consistently recognized disparate-impact liability and investigated charges alleging disparate-impact discrimination since shortly after the passage of Title VII.

86. In making this arbitrary and abrupt change, the EEOC failed to take into account the reliance interests of workers who had filed or plan to file charges of discrimination with the EEOC alleging disparate-impact discrimination and of employers who benefit from the pre-litigation processes provided by the EEOC's charge-investigation function.

87. As a result, the Disparate Impact Rule is arbitrary and capricious.

**Count Three**

**Violation of the Administrative Procedure Act—5 U.S.C. § 706(2)(C)
In excess of statutory jurisdiction**

88. Plaintiff restates and realleges all paragraphs above.

89. Under the APA. A court must "hold unlawful and set aside agency action" that is "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(C).

90. The Disparate Impact Rule is a "rule" within the meaning of the APA because it is "an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." 5 U.S.C. § 551(4).

91. Title VII gives the EEOC authority "to issue, amend, or rescind suitable procedural regulations to carry out the provisions of this subchapter." 42 U.S.C. § 2000e-12(a).

92.     The Supreme Court has interpreted this statutory language to prohibit the EEOC from issuing substantive or legislative rules under Title VII. *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 257 (1991).

93.     The Disparate Impact Rule is not a "procedural regulation" but rather a substantive or legislative rule. Among other reasons, it alters the rights and interests of private parties and codifies the substantive value judgment expressed in Executive Order 14281—that disparate impact is a disfavored theory of discrimination—and mandates that the EEOC no longer investigate or conciliate disparate-impact charges in order to effectuate that value judgment.

94.     As a result, the EEOC lacked authority to issue the Disparate Impact Rule under Title VII.

### Count Four

**Violation of the Administrative Procedure Act— 5 U.S.C. § 706(2)(D)**
**Without observance of procedure required by law**

95.     Plaintiff restates and realleges all paragraphs above.

96.     Under the APA, a court must "hold unlawful and set aside agency action" undertaken "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

97.     The EEOC cannot issue substantive rules without following the notice-and-comment rulemaking procedures set out in the APA. *See* 5 U.S.C. § 553.

98.     Those procedures require that "notice of proposed rule making shall be published in the Federal Register" unless those subject to the rule are personally served or receive notice in some other way. 5 U.S.C. § 553(b). The agency must then give interested persons an opportunity to provide input on the proposed rule, either through written comments or oral testimony. *Id.* § 553(c). To further ensure that affected parties receive sufficient notice of forthcoming agency

action, substantive rules must generally be published or served 30 days before they take effect. *Id.* § 553(d).

99.    The Disparate Impact Rule is not an "interpretative rule[], general statement[] of policy, or rule[] of agency organization, procedure, or practice." 5 U.S.C. § 553(b).

100.    The Disparate Impact Rule is a substantive rule subject to notice-and-comment requirements because it affects the rights and interests of private parties by abruptly ending investigations and foreclosing the possibility of EEOC-facilitated conciliation for anyone with a pending EEOC charge premised solely on disparate impact, and by preventing any disparate-impact-based discrimination charges from being investigated or conciliated in the future.

101.    Defendants promulgated the Disparate Impact Rule without following the notice-and-comment procedures required by the APA. *See* 5 U.S.C. § 553.

102.    The EEOC requires a majority vote of the Commissioners to engage in rulemaking, or the formulation, amendment, or repeal of a rule. 5 U.S.C. § 551(5). Votes can only take place when a quorum of three Commissioners is present. *See* 42 U.S.C. § 2000e-4(c).

103.    Defendants violated these procedural requirements by promulgating the Disparate Impact Rule without a majority vote of the Commissioners at a time when the EEOC lacked a quorum of three Commissioners.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court:

a.    Declare that Defendants' Disparate Impact Rule is unlawful under Title VII of the Civil Rights Act of 1964, the ADEA, and the APA;

b.    Stay the Disparate Impact Rule pursuant to 5 U.S.C. § 705;

c.      Issue all necessary and appropriate process to prevent irreparable injury to those whose charges have been dismissed and who have received right-to-sue notices based on the Disparate Impact Rule, pursuant to 5 U.S.C. § 705;

d.      Vacate and set aside the Disparate Impact Rule pursuant to 5 U.S.C. § 706(2);

e.      Permanently enjoin Defendants from implementing the Disparate Impact Rule, including from failing to investigate or conciliate charges pursuant to the Disparate Impact Rule;

f.      Award Plaintiff her costs and reasonable attorney's fees; and

g.      Grant such other relief as the Court deems necessary, just, and proper.

Dated: October 20, 2025        Respectfully submitted,

/s/ Karla Gilbride

Karla Gilbride (DC Bar No. 1005586)
Kelly Lew (DC Bar No. 90028415)
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
kgilbride@citizen.org

Shelby Leighton*
PUBLIC JUSTICE
1620 L St. NW, Ste. 630
Washington, DC 20036
(202) 797-8600
sleighton@publicjustice.net

Hannah M. Kieschnick*
PUBLIC JUSTICE
475 14th St., Ste. 610
Oakland, CA 94612
(510) 622-8150
hkieschnick@publicjustice.net

Valerie L. Collins*
David Seligman*
TOWARDS JUSTICE
303 E. 17th Ave.
Denver, CO 80203

720 295-1672
valerie@towardsjustice.org

Nathan Leys (DC Bar No. 90018987)
FARMSTAND
712 H Street NE Suite 2534
Washington, DC 20002
(202) 595-8816
nathan@farmstand.org

*Pro hac vice forthcoming

*Counsel for Plaintiff Leah Cross*