UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LEAH CROSS,

               Plaintiff,

      v.

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION, et al.,

           Defendants.

Civ. A. No. 25-3702 (TNM)

**DEFENDANTS' OPPOSITION TO
MOTION FOR PRELIMINARY INJUNCTION AND STAY**

## TABLE OF CONTENTS

Table of Contents .................................................................................................... i

Table of Authorities ............................................................................................. iii

Introduction .......................................................................................................... 1

Background ........................................................................................................... 2

    I.     Statutory Background ............................................................................. 2

    II.    Factual Background ................................................................................. 4

    III.   Procedural Background ........................................................................... 6

Legal Standards ..................................................................................................... 7

Argument ............................................................................................................... 9

    I.     The Court Lacks Jurisdiction Because Plaintiff Lacks Standing. ........... 9

        A.   Plaintiff Lacks Standing to Challenge the Commission's Exercise of Its Enforcement Discretion. ..................................................... 9

        B.   Plaintiff Has No Cognizable Injury. ......................................... 12

        C.   Plaintiff's Injuries Are Not Redressable. .................................. 17

    II.    Plaintiff Is Unlikely To Succeed on the Merits. .................................. 19

        A.   Plaintiff Has Not Stated a Cause of Action Under the APA .................... 19

           1.   Plaintiff Does Not Identify a Final Agency Action. ..................... 19

           2.   Plaintiff Has An Adequate Alternative Remedy in a Court. .......... 21

           3.   The Commission's Enforcement Decisions are Committed to Agency Discretion by Law. ........................................................ 22

        B.   Plaintiff Cannot Succeed on the Substantive Merits ................................ 27

           1.   The EEOC fulfilled its statutory mandate in Plaintiff's case ........ 27

           2.   Plaintiff's Substantive APA Claims Fail. ................................... 28

           3.   Plaintiff Does Not Identify Any Procedural APA Violations ....... 29

    III.   The Remaining Preliminary Injunction Factors Tilt in Favor of the Government 31

        A.   Plaintiff Has Not Established Irreparable Harm. ....................... 31

        B.   The Balance of Equities Tilts Toward the Commission. ........................ 33

        C.   Any Injunctive Relief Should Be Limited Solely to Plaintiff. ................. 34

    IV.   Any Preliminary Injunction Should Be Stayed. .................................... 37

V.     The Court Should Order that Plaintiffs Post a Bond as a Condition of Preliminary Relief. .................................................................................................................. 38

Conclusion ........................................................................................................................ 39

# TABLE OF AUTHORITIES

Cases chiefly relied upon are marked with *

**Cases**                                                                      **Page(s)**

*Am. Fed'n of Gov't Emps v. Off. of Special Counsel*,
   1 F.4th 180 (4th Cir. 2021) ........................................................................... 26

*Am. First Leg. Found. v. Greer*,
   153 F.4th 1311 (D.C. Cir. 2025) .................................................................... 18

*Architects & Eng'rs for 9/11 Truth v. Raimondo*,
   Civ. A. No. 21-2365 (TNM), 2022 WL 3042181 (D.D.C. Aug. 2, 2022) .............. 16

*Ass'n for Educ. Fin. & Policy, Inc. v. McMahon*,
   786 F. Supp. 3d 13 (D.D.C. 2025) .................................................................. 19

*Aviles-Wynkoop v. Neal*,
   978 F. Supp. 2d 15 (D.D.C. 2013) .................................................................. 32

*Baba v. Japan Travel Bureau*,
   111 F.3d 2 (2d Cir. 1997) ............................................................................... 16

*Benisek v. Lamone*,
   585 U.S. 155 (2018) ......................................................................................... 8

*Bennett v. Spear*,
   520 U.S. 154 (1997) ....................................................................................... 20

* *Borg-Warner Protective Servs. Corp. v. EEOC*,
   245 F.3d 831 (D.C. Cir. 2001) ........................................................... 20, 21, 30

*Bowen v. Massachusetts*,
   487 U.S. 879 (1988) ....................................................................................... 21

*Buckley v. Valeo*,
   424 U.S. 1 (1976) ........................................................................................... 12

*Chandler v. Roudebush*,
   425 U.S. 840 (1976) ....................................................................................... 22

* *Chaplaincy of Full Gospel Churches v. England*,
   454 F.3d 290 (D.C. Cir. 2006) ............................................................... 7, 8, 32

*Citizens for Resp. and Ethics in Wash. v. Fed. Elec. Comm'n*,
   993 F.3d 880 (D.C. Cir. 2021) ............................................................... 24, 26

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ........................................................................................ 18, 19

*Clevinger v. Advoc. Holdings, Inc.*,
    134 F.4th 1230 (D.C. Cir. 2025) ............................................................................ 32

*Climate United Fund v. Citibank, N.A.*,
    --- F.4th ---, No. 25-5122, 2025 WL 2502881 (D.C. Cir. Sep. 2, 2025) ................................. 36

*Cmty. for Creative Non-Violence v. Pierce*,
    786 F.2d 1199 (D.C. Cir. 1986) ........................................................................ 17, 26

*Cornish v. Dudas*,
    540 F. Supp. 2d 61 (D.D.C. 2008) .......................................................................... 32

*Ctr. for L. & Educ. v. Dep't of Educ.*,
    396 F.3d 1152 (D.C. Cir. 2005) ............................................................................ 13

*Davis v. FEC*,
    554 U.S. 724 (2008) ....................................................................................... 9

*De Martinez v. Lamagno*,
    515 U.S. 417 (1995) ...................................................................................... 25

*Dillard v. D.C. Coll. Access Program*,
    Civ. A. No. 23-0538 (TJK), 2024 WL 864198 (D.D.C. Feb. 29, 2024) ................................... 14

*Doe v. Trump*,
    142 F.4th 109 (1st Cir. 2025) .............................................................................. 36

*Dorfmann v. Boozer*,
    414 F.2d 1168 (D.C. Cir. 1969) ............................................................................. 8

*EEOC v. Associated Dry Goods Corp.*,
    449 U.S. 590 (1981) ...................................................................................... 35

*EEOC v. Keco Indus. Inc.*,
    748 F.2d 1097 (6th Cir. 1984) .............................................................................. 14

*EEOC v. Waffle House, Inc.*,
    534 U.S. 279 (2002) ................................................................................... 13, 23

*El Puente de Williamsburg, Inc.-Enlace Latino de Accion Climatica, Inc. v. FERC*,
    152 F.4th 211 (D.C. Cir. 2025) ............................................................................. 23

*El Rio Santa Cruz Neighborhood Health Ctr. v. HHS,*
    396 F.3d 1265 (D.C. Cir. 2005) ........................................................ 21

*Fed. Election Comm'n v. Akins,*
    524 U.S. 11 (1998) ............................................................................ 16

*Fla. Audubon Soc'y v. Bentsen,*
    94 F.3d 658 (D.C. Cir. 1996) .......................................................... 13

*Food & Drug Admin. v. All. for Hippocratic Med.,*
    602 U.S. 367 (2024) ............................................................................ 9

*Fort Bend Cnty. v. Davis,*
    587 U.S. 541 (2019) ............................................................................ 3

*Franklin v. Massachusetts,*
    505 U.S. 788 (1992) .......................................................................... 29

*Fresno Cmty. Hosp. and Med. Ctr. v. Cochran,*
    987 F.3d 158 (D.C. Cir. 2021) ........................................................ 31

*Friends of Animals v. Jewell,*
    828 F.3d 989 (D.C. Cir. 2016) ............................................... 9, 16, 19

*Garcia v. Vilsack,*
    563 F.3d 519 (D.C. Cir. 2009) ........................................................ 21

*Gen. Tel. Co. of Nw., Inc. v. EEOC,*
    446 U.S. 318 (1980) .......................................................................... 13

* *Georator Corp. v. EEOC,*
    592 F.2d 765 (4th Cir. 1979) ..................................................... 20, 21

*Gill v. Whitford,*
    585 U.S. 48 (2018) ............................................................................ 35

*Gladstone, Realtors v. Village of Bellwood,*
    441 U.S. 91 (1979) ............................................................................ 17

*Global Health Council v. Trump,*
    153 F.4th 1 (D.C. Cir. 2025) ............................................................ 36

*Goodman v. F.C.C.,*
    182 F.3d 987 (D.C. Cir. 1999) ........................................................ 17

*Grupo Mexicano de Desarrollo, S. A. v. All. Bond Fund, Inc.*,
  527 U.S. 308 (1999) ................................................................................ 36

*Harris v. United States*,
  536 U.S. 545 (2002) ................................................................................ 27

*Hecht Co. v. Bowles*,
  321 U.S. 321 (1944) ................................................................................ 36

\* *Heckler v. Chaney*,
  470 U.S. 821 (1985) ........................................................................ *passim*

*ICC v. Locomotive Eng'rs*,
  482 U.S. 270 (1987) ................................................................................ 12

*Immigrant Defs. L. Ctr. v. Noem*,
  145 F.4th 972 (9th Cir. 2025) ................................................................. 36

*Johnson v. Panetta*,
  953 F. Supp. 2d 244 (D.D.C. 2013) ........................................................ 30

*Kim v. FINRA*,
  698 F. Supp. 3d 147 (D.D.C. 2023) ........................................................ 33

*LaRoque v. Holder*,
  650 F.3d 777 (D.C. Cir. 2011) ................................................................ 35

*Leopold v. Manger*,
  102 F.4th 491 (D.C. Cir. 2024) ................................................................. 9

*Lincoln v. Vigil*,
  508 U.S. 182 (1993) .......................................................................... 22, 23

\* *Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .................................................................... 9, 13, 17

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990) .......................................................................... 19, 20

*Mach Mining, LLC v. E.E.O.C.*,
  575 U.S. 480 (2015) .......................................................................... 15, 25

*Madsen v. Women's Health Ctr., Inc.*,
  512 U.S. 753 (1994) ................................................................................ 34

*Martini v. Fed. Nat'l Mortg. Ass'n*,
  178 F.3d 1336 (D.C. Cir. 1999) ......................................................................... 14, 15

*Massachusetts v. Mellon*,
  262 U.S. 447 (1923) ..................................................................................................... 37

*Mazurek v. Armstrong*,
  520 U.S. 968 (1997) ....................................................................................................... 8

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973) .......................................................................................... 3, 16, 33

*Mississippi v. Johnson*,
  71 U.S. 475 (1866) ....................................................................................................... 18

*Murthy v. Vilsack*,
  609 F.3d 460 (D.C. Cir. 2010) ..................................................................................... 14

*Nat'l Parks Conservation Ass'n v. U.S. Forest Serv.*,
  Civ. A. No. 15-1582 (APM), 2015 WL 9269401 (D.D.C. Dec. 8, 2015) ................... 8

*Neb. Dep't of Health & Hum. Servs. v. Dep't of Health & Hum. Servs.*,
  435 F.3d 326 (D.C. Cir. 2006) ..................................................................................... 34

*Nielsen v. Hagel*,
  666 F. App'x 225 (4th Cir. 2016) ................................................................................ 22

*Nken v. Holder*,
  556 U.S. 418 (2009) ................................................................................................. 8, 33

*Norton v. S. Utah Wilderness All.*,
  542 U.S. 55 (2004) ....................................................................................................... 19

*Occidental Life Ins. Co. of California v. EEOC*,
  432 U.S. 355 (1977) ..................................................................................................... 15

*Pinson v. Dep't of Just.*,
  514 F. Supp. 3d 232 (D.D.C. 2021) ............................................................................ 17

*Powers v. Ohio*,
  499 U.S. 400 (1991) ..................................................................................................... 17

*Raines v. Dep't of Just.*,
  424 F. Supp. 2d 60 (D.D.C. 2006) .............................................................................. 30

*Robinson v. Farley*,
  364 264 F. Supp. 3d 154 (D.D.C. 2017) ................................................................. 30

*Santos v. Collins*,
  Civ. A. No. 24-1759 (JDB), 2025 WL 1823471 (D.D.C. Feb. 26, 2025) ............................... 32

*Scheerer v. Rose State College*,
  950 F.2d 661 (10th Cir. 1991) .......................................................................... 16

*Scotts Value Band of Pomo Indians v. Burgum*,
  Civ. A. No. 25-0958 (TNM), 2025 WL 3034885 (D.D.C. Oct. 30, 2025) ............................... 31

*Scottsdale Capital Advisors Corp. v. Fin. Indus. Regul. Auth. Inc.*,
  678 F. Supp. 3d 88 (D.D.C. 2023) ....................................................................... 8

*Seed v. EPA*,
  100 F.4th 257 (D.C. Cir. 2024) ......................................................................... 17

*Severino v. Biden*,
  71 F.4th 1038 (D.C. Cir. 2023) ......................................................................... 29

*Sierra Club v. Jackson*,
  648 F.3d 848 (D.C. Cir. 2011) .......................................................................... 25

*Sierra Club v. Larson*,
  882 F.2d 128 (4th Cir. 1989) ....................................................................... 23, 24

* *Smith v. Casellas*,
  119 F.3d 33 (D.C. Cir. 1997) ........................................................................... 15

*Solenex LLC v. Bernhardt*,
  962 F.3d 520 (D.C. Cir. 2020) .......................................................................... 31

*Spector Motor Serv., Inc. v. McLaughlin*,
  323 U.S. 101 (1944) .................................................................................... 27

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ...................................................................................... 9

*Swift v. United States*,
  318 F.3d 250 (D.C. Cir. 2003) .......................................................................... 24

*Town of Castle Rock v. Gonzales*,
  545 U.S. 748 (2005) .................................................................................... 26

*TransUnion LLC v. Ramirez,*
  594 U.S. 413 (2021) ................................................................................................. 10

*\* Trump v. CASA, Inc.,*
  606 U.S. 831 (2025) ............................................................................... 34, 35, 36, 37

*Trump v. United States,*
  603 U.S. 593 (2024) ................................................................................................. 11

*U.S. Capitol Police v. Off. of Compl.,*
  908 F.3d 748 (Fed. Cir. 2018) ................................................................................. 36

*U.S. Conf. of Cath. Bishops v. Dep't of State,*
  770 F. Supp. 3d 155 (D.D.C. 2025) ..................................................................... 9, 19

*United States v. Safarini,*
  257 F. Supp. 2d 191 (D.D.C. 2003) .......................................................................... 27

*\* United States v. Texas,*
  599 U.S. 670 (2023) .......................................................................................... *passim*

*Ward v. EEOC,*
  719 F.2d 311 (9th Cir. 1983) ............................................................................. 21, 22

*Wayte v. United States,*
  470 U.S. 598 (1985) ................................................................................................. 18

*West v. Holder,*
  60 F. Supp. 3d 197 (D.D.C. 2015) ........................................................................... 18

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) ....................................................................................................... 8

*Worth v. Jackson,*
  451 F.3d 854 (D.C. Cir. 2006) ................................................................................. 18

**Statutes**

5 U.S.C. § 701(a)(2) ...................................................................................................... 22

5 U.S.C. § 703 ............................................................................................................... 37

5 U.S.C. § 704 ......................................................................................................... 20, 21

5 U.S.C. § 706(2)(A) .................................................................................................... 6, 7

5 U.S.C. § 706(2)(C) ....................................................................................................... 7

5 U.S.C. § 706(2)(D) .................................................................................................... 7

28 U.S.C. § 2342 ...................................................................................................... 37

29 U.S.C. § 626(d)(2) ............................................................................................... 27

42 U.S.C. § 2000e-4(a) ............................................................................................. 31

42 U.S.C. § 2000e-5(b) ....................................................................................... *passim*

42 U.S.C. § 2000e-5(e)(1) .......................................................................................... 3

42 U.S.C. § 2000e–5(f)(1) ................................................................................... *passim*

42 U.S.C. § 2000e-8(e) ............................................................................................. 35

**Rules**

Fed. R. Civ. P. 65(c) ................................................................................................. 38

**Regulations**

29 C.F.R. § 1601.15(a) ............................................................................................. 14

29 C.F.R. § 1601.19 ................................................................................................. 28

29 C.F.R. § 1601.28(e) ............................................................................................... 3

**Other Authorities**

Exec. Order 14,281: Restoring Equality of Opportunity and Meritocracy § 2, 90 Fed. Reg.
17,537 (Apr. 23, 2025) ......................................................................................... 29

Samuel L. Bray, *Multiple Chancellors: Reforming the National Injunction*,
131 Harv. L. Rev. 417 (2017) ............................................................................... 37

## INTRODUCTION

Plaintiff asks this Court to dictate the Equal Employment Opportunity Commission's ("EEOC" or the "Commission") limited resources, but such relief is not something any court can grant. The Commission is fully committed to its important work to ensure that America's workplaces remain free from discrimination, notwithstanding Plaintiff's insinuations otherwise. The confidential, internal memo in question[1] simply directs the field to focus resources on intentional discrimination claims.

Plaintiff fails to meet her heavy burden for a preliminary injunction and stay, and the Court should deny the motions. Plaintiff is unlikely to succeed on the merits. To start, she lacks standing. She does not have a cognizable injury—her complaint was investigated, and she has been given notice of her right to sue, allowing her to pursue her Title VII disparate impact claim through a private right of action. Plaintiff has no legal entitlement to more, and thus no injury. Nor are her claims redressable. As a private citizen, she has no interest in the prosecution of another, and in any event, even if her investigation were to be reopened, she would have no right to direct the course of the investigation and the information collected, nor could a court prescribe its outcome.

Plaintiff also fails to state a cause of action under the APA because (1) there is no final agency action, (2) she has an adequate alternative remedy in court, and (3) the Commission's enforcement decisions are committed to agency discretion by law.

Furthermore, the merits of Plaintiff's APA claims fail because (1) the Commission did not act contrary to statute, (2) it was not arbitrary and capricious to close out disparate impact investigations, and (3) the Commission did not fail to follow any procedures required by the APA.

---

[1] The Commission does not waive and preserves privileges and admissibility arguments related to the alleged document in Plaintiff's exhibits.

Plaintiff's motion for a preliminary injunction further fails because she will suffer no irreparable harm and the balance of the equities and the public interest tilt decidedly in the Commission's favor. Plaintiff can still bring suit to pursue her Title VII disparate impact claim, she can obtain the information she seeks directly from her employer through discovery, and in all events any alleged harm is speculative, not great and certain, for it is unknowable if further Commission investigation would yield anything of value. As for the equities, the Commission's loss of its enforcement discretion for how to employ its limited resources is grave, whereas Plaintiff suffers no harm, for the Court does not have jurisdiction, and, in any event, she can still bring suit and obtain discovery that way.

Finally, Plaintiff seeks extraordinary injunctive relief, including disclosing private details about others' claims—disclosure of which is prohibited and subject to criminal penalties under Title VII. The request is all the more egregious where no class awaits certification and the Supreme Court recently explained the limits on the kind of universal injunction Plaintiff seeks. Plaintiff cannot use the APA as a workaround to obtain a universal injunction and transgress Title VII's limits.

Ultimately, it is the Commission that determines how a charge investigation should proceed. While private parties such as Plaintiff might not like the decision, that does not give her the legal right to challenge that determination in court. Plaintiff asks for breathtaking relief without a limiting principle. The Court should not entertain her requests and instead should deny relief.

## BACKGROUND

### I.    <u>Statutory Background</u>

Congress created the Commission in Title VII of the Civil Rights Act of 1964 and endowed it with various authorities to enforce that law. *See* Pub. L. No. 88-352, § 705, 78 Stat. 241, 258 (1964). One such authority is to receive charges of discrimination from private employees.

Congress also required that before any employee could sue its employer for employment discrimination, the employee must file a charge with the Commission. *See id.* § 706(e), 78 Stat. at 260. In 1972, Congress gave the Commission additional authority to sue, at its discretion, private employers in federal court for violations of Title VII if the Commission determined that a charge had merit. *See* Pub. L. No. 92-261, § 4, 86 Stat. 103, 104–07 (1972).

The process works like this: A person claiming to be aggrieved by an unlawful employment practice must timely file a charge of discrimination with the Commission, *see* 42 U.S.C. § 2000e-5(e)(1), and upon receipt of a charge, the Commission must serve a notice of the charge on the employer within ten days, *see id.* § 2000e-5(b). Title VII says that the Commission "shall make an investigation thereof" upon receipt of the charge but does not specify the details or manner of that investigation. *Id.* If "after such investigation" the Commission determines that there is not reasonable cause to believe the charge is true, the Commission "shall dismiss the charge and promptly notify" the charging party and the employer. *Id.* Notification to the charging party comes in a "right-to-sue" notice. *See* 29 C.F.R. § 1601.28(e). Alternatively, if the Commission finds "reasonable cause" to believe the charge is true, the Commission must first use informal conciliation means to eliminate the unlawful employment practice and, if those means fail, may sue the employer directly. *See* 42 U.S.C. § 2000e-5(b), (f)(1).

Whether or not the Commission acts on the charge, the charging party is entitled to a right-to-sue notice 180 days after the charge is filed. *See id.* § 2000e-5(f)(1). Within 90 days of receiving the notice, the charging party may commence a lawsuit against the employer. *See id.*; *see generally Fort Bend Cnty. v. Davis*, 587 U.S. 541, 544–45 (2019) (describing this process). Whether the charging party or the Commission sues, the subsequent trial considers the discrimination allegations de novo. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 799

(1973) (explaining that "court actions under Title VII are de novo proceedings and . . . a Commission 'no reasonable cause' finding does not bar a lawsuit in the case").

## II.    <u>Factual Background</u>

The following facts are taken from Plaintiff's complaint and her filings in this case and are accepted as true solely for the purposes of this brief.

On May 22, 2023, *see* Declaration of Valerie L. Collins (ECF No. 2-4, "Collins Decl.") at 1, Plaintiff Leah Cross filed a Complaint of Discrimination with the EEOC and the Colorado Civil Rights Division, asserting discrimination on the basis of "sex" under Title VII and Colorado law by her employer, Amazon, for which she delivered packages. *Id.* at 5-6 (complaint form). She alleged that Amazon requires its drivers to work at a pace that does not allow bathroom breaks, and that this has a disparate impact on female drivers; Plaintiff contends that there is an "effective requirement that delivery drivers urinate in bottles to meet Amazon's delivery goals." *Id.* at 6. She filed her charge on both her own behalf and "on behalf of a class consisting of all employees who delivered packages as [Delivery Service Providers] drivers in Colorado who have female anatomy." *Id.* at 7. Plaintiff did not bring a claim under the Age Discrimination in Employment Act ("ADEA"), nor did she allege that she is forty or older. *See generally id.* at 5-7.

That same day, Plaintiff filed suit in Colorado state court on her own and others' behalf and on behalf of a putative class based on the same underlying facts, alleging violations of state wage and hour laws. *Id.* at 1-2 ¶ 4; *see also id.* at 10-25 (state court complaint in *Cross v. Amazon.Com Inc.*, No. 2023CV331495 (Colo. Dist. Ct., Denver County filed May 22, 2023)). Amazon removed that suit to the United States District Court for the District of Colorado, where it remains pending as Civil Action No. 23-2099 (D. Colo.). *Id.* at 2 ¶ 5.

Ms. Cross's complaint was transferred by the Colorado Civil Rights Division to the EEOC for investigation. *Id.* ¶ 6. The EEOC's Denver Field Office undertook an investigation, including

receiving Amazon's position statement on January 12, 2024. *Id.* Nine months later, the EEOC Investigator handling the case reached out to Ms. Cross's counsel, indicating that the Commission "is very interested in moving forward with Ms. Cross's case," so she was asked to sit for an interview on December 11, 2024. *Id.* at 27 (Dec. 4, 2024, email from EEOC to V. Collins). The interview ultimately was conducted on January 14, 2025. *Id.* at 2 ¶ 7.

Plaintiff's counsel was informed in September 2025 that the EEOC "would be closing Ms. Cross's charge because of a new internal directive to stop investigating all disparate impact charges." *Id.* ¶ 9. In response, her counsel noted that the claims were brought under Title VII and that they already had been investigated, but her counsel contended that the investigation was being "prematurely end[ed]." *Id.* at 29 (Sept. 29, 2025 letter from V. Collins to EEOC).

On September 29, 2025, the EEOC's Denver Field Office informed Plaintiff that "[t]he investigation of your charge has concluded, and your charge is being administratively closed. This closure does not reflect a determination on the merits. If you wish to pursue your claims further, you must file a lawsuit within 90-days of your receipt of EEOC's official notice of dismissal." *Id.* at 31 (EEOC notice).

An attorney who represents other plaintiffs in employment class actions, Declaration of Joseph M. Sellers (ECF No. 2-5) ¶ 2, explains that after receiving a notice of a right to sue, a complainant can obtain the "results of the EEOC investigation," which "can be invaluable in helping to determine whether to go forward with litigation." *Id.* ¶ 8. Such information helps the attorney when "deciding whether to represent a client," and "help [him] frame [his] initial discovery." *Id.* Counsel appreciates the "early insights into the manner in which discrimination may have occurred" that he gleans from this "publicly-funded report." *Id.* ¶ 10. He fears that without this EEOC-provided resource, it will be more difficult for him to determine "whether or

not to proceed with litigation and, if so, how to frame [clients'] early discovery." *Id.* ¶ 11. He asserts that without an EEOC investigation, his clients will lack "any reasonable opportunity to investigate and possibly challenge underlying discriminatory conduct." *Id.*

Plaintiff attaches a confidential and internal EEOC Office of Field Programs memorandum effective September 15, 2025, entitled "Procedure for Processing Charges Potentially Alleging Disparate Impact Discrimination to Comply with *Restoring Equality of Opportunity and Meritocracy* Executive Order" ("memo"). ECF No. 2-3. The memo sets forth procedures to be followed for cases raising solely disparate impact theories of liability. *Id.* at 2. The memo states that "[t]he Commission is not commencing, developing, or continuing to pursue litigation advancing disparate impact causes of action." *Id.* The memo provides that pending charges of discrimination premised solely on disparate impact liability were to be administratively closed by September 30, 2025, unless the EEOC could render a no cause finding by October 31, 2025. *Id.* The memo explains that an investigation that may have begun as a disparate impact matter could instead continue to be pursued as a disparate treatment matter if the facts and allegations support such characterization. *Id.* The memo also states that the "EEOC cannot facilitate the resolution of a pending charge of discrimination that is premised solely on disparate impact liability through conciliation." *Id.* at 4.

### III.    <u>Procedural Background</u>

The Complaint was filed on October 20, 2025. Among other things, Plaintiff alleges that she "has been denied the benefit of a full investigation." Compl. (ECF No. 1) ¶ 75. She brings four counts under the Administrative Procedure Act ("APA"). In Count One, brought under 5 U.S.C. § 706(2)(A), she contends that the Commission acted contrary to law by "selectively exclud[ing] categories of discrimination from the charge-investigation process" by directing staff to "no longer investigate or conciliate disparate-impact claims, regardless of their individual

merits," contrary to Plaintiff's reading of Title VII and the ADEA.  *Id.* ¶¶ 79, 81.  In Count Two, brought under 5 U.S.C. § 706(2)(A), she contends that the EEOC acted arbitrarily and capriciously in making "an abrupt about-face," "fail[ing] to take into account the reliance interests of workers." *Id.* ¶ 86.  In Count Three, brought under 5 U.S.C. § 706(2)(C), she alleges that the EEOC's memo "is not a 'procedural regulation' but rather a substantive or legislative rule that "alters the rights and interests of private parties."  *Id.* ¶ 93.  And Count Four, brought under 5 U.S.C. § 706(2)(D), contends that the EEOC's memo is a substantive rule that had to go through notice-and-comment rulemaking procedures and which required a majority vote of a quorum of EEOC Commissioners, and that the memo is invalid because it was not issued pursuant to such procedures.  *Id.* ¶ 97.

Also on October 20, 2025, Plaintiff moved for a preliminary injunction.  It characterizes the memo as a "Disparate Impact Rule" and seeks to have it declared as without force or effect, seeks an injunction barring the EEOC from implementing the memo, seeks an order tolling the deadline for filing lawsuits in matters that were administratively closed pursuant to the memo, seeks an order requiring the filing of a list of "all charges that have been affected" by the memo, and asks that the EEOC be ordered to provide notice to those whose charges were closed pursuant to the memo advising them of this litigation, advising them that the deadline to file a lawsuit has been tolled, and providing that during this lawsuit's pendency a complainant may have their dismissal notice vacated and have the investigation resume, "which requests the EEOC may not deny."  Proposed Order (ECF No. 2-6) at 1-2.

## LEGAL STANDARDS

A preliminary injunction is an "extraordinary remedy that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion."  *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (citation omitted).  Such a request involves the exercise of a very far-reaching power that "should be sparingly exercised."  *Dorfmann*

*v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969) (citation omitted).  The movant must demonstrate all of the following factors by "a clear showing": (1) likelihood of success on the merits; (2) irreparable harm absent preliminary emergency relief; (3) the balance of equities between the parties tips in favor of the movant; and (4) preliminary relief serves the public interest.  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam); *accord Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  "The third and fourth factors, harm to the opposing party and the public interest, merge when the Government is the opposing party."  *Nken v. Holder*, 556 U.S. 418, 435 (2009) (rejecting view that the public interest is "negligible" when juxtaposed against a single person's claim).  Preliminary injunctions are not "awarded as of right," but "[a]s a matter of equitable discretion, a preliminary injunction does not [even] follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits."  *Benisek v. Lamone*, 585 U.S. 155, 158 (2018).  "Rather, a court must be persuaded as to all four factors."  *Scottsdale Capital Advisors Corp. v. Fin. Indus. Regul. Auth. Inc.,* 678 F. Supp. 3d 88, 100 (D.D.C. 2023).  Importantly, however, a "movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief."  *Chaplaincy*, 454 F.3d at 297.  Moreover, "[a]bsent a 'substantial indication' of likely success on the merits, 'there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review.'"  *Nat'l Parks Conservation Ass'n v. U.S. Forest Serv.*, Civ. A. No. 15-1582 (APM), 2015 WL 9269401, at *1 (D.D.C. Dec. 8, 2015) (citation omitted).  "Federal courts start from the presumption that they lack such jurisdiction," and "the party invoking a federal court's jurisdiction has the burden of proving it."  *U.S. Conf. of Cath. Bishops v. Dep't of State*, 770 F. Supp. 3d 155, 161 (D.D.C. 2025) (McFadden, J.).

## ARGUMENT

### I.    The Court Lacks Jurisdiction Because Plaintiff Lacks Standing.

The Court must "begin with the 'first and fundamental question' of subject-matter jurisdiction." *Leopold v. Manger*, 102 F.4th 491, 494 (D.C. Cir. 2024) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). And, of all jurisdictional matters, standing is a "bedrock constitutional requirement." *United States v. Texas*, 599 U.S. 670, 675 (2023). It requires that a plaintiff "possess a personal stake" in the outcome, which "helps ensure that courts decide litigants' legal rights in specific cases, as Article III requires." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024).

Under any theory of standing, "the irreducible constitutional minimum" requires that (1) the plaintiff have suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) there must exist "a causal connection between the injury and the conduct complained of"; and (3) it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of Animals v. Jewell*, 828 F.3d 989, 991–92 (D.C. Cir. 2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Standing is "not dispensed in gross," and Plaintiff, therefore, "must demonstrate standing for each claim [s]he seeks to press and for each form of relief that is sought." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (citation modified).

### A.    Plaintiff Lacks Standing to Challenge the Commission's Exercise of Its Enforcement Discretion.

Suits attempting to control the Executive's exercise of enforcement discretion "run up against the Executive's Article II authority to enforce federal law." *Texas*, 599 U.S. at 678. The gravamen of the Complaint challenges how the Commission "enforce[es] the bedrock anti-discrimination protections for workers in Title VII of the Civil Rights Act of 1964." Compl. (ECF

No. 1) ¶ 1.  Plaintiff seeks an order directing how the Commission should enforce those laws through its investigative activities in a manner that she prefers.  But a member of the public like Plaintiff "lacks standing to contest the policies of the prosecuting authorit[ies] when [s]he [her]self is neither prosecuted nor threatened with prosecution." *Texas*, 599 U.S. at 674 (citation modified).  Affording Plaintiff standing here "would entail expansive judicial direction" of the Commission's charge-processing policies.  *Id.* at 681.

The Supreme Court in *Texas* "decline[d] to start the Federal Judiciary down that uncharted path[,]" *id.* at 681, when various states challenged the Department of Homeland Security's ("DHS") arrest policies in a way that would force DHS "to make more arrests[,]" *id.* at 674.  The Supreme Court addressed whether a court "may in effect order the Executive Branch to take enforcement actions against violators of federal law[,]" and concluded, after a review of "this Court's Article III precedents and the historical practice, the answer is no."  *Id.* at 685.  The Executive Branch "possesses authority to decide how to prioritize and how to aggressively pursue legal actions against defendants who violate the law."  *Id.* at 678 (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 429 (2021)).  And courts "generally lack meaningful standards for assessing the propriety of enforcement choices" given that "the Executive Branch must balance many factors when devising" its enforcement priorities.  *Id.* at 679–80.  Allowing the suit in *Texas* would spawn "complaints in future years about alleged Executive Branch under-enforcement" of federal laws, suits that courts could not entertain given their "restricted role" under the separation of powers.  *Id.* at 681.

The result should be the same here.  Plaintiff asks this Court to judicially micromanage and dictate how the Commission investigates a subset of the tens of thousands of charges it receives each year.  Title VII directs the Commission to determine "whether reasonable cause exists" on a

charge. 42 U.S.C. § 2000e-5(b). Any procedures to reach that determination are part of the Commission's enforcement discretion, including the September 15, 2025, memo. *See* Compl. (ECF No. 1) ¶ 5; *see also id*. ¶¶ 25-30 (acknowledging the Commission's various investigative tools and that such investigations could lead to different outcomes). And although Plaintiff alleges the memo results in the Commission no longer investigating certain charges, *see, e.g.*, *id.* ¶ 60, the timing and extent of an investigation is "the special province of the Executive Branch," *Trump v. United States*, 603 U.S. 593, 620 (2024) (citing *Heckler v. Chaney*, 470 U.S. 821, 832 (1985)).

This Court cannot order the Commission to take a certain investigative approach, particularly given the volume of incoming charges, which was over 88,500 last year. *See* EEOC, *Fiscal Year 2024 Annual Performance Report* 12 (Jan. 17, 2025).[2] After all, "[a]n agency generally cannot act against each technical violation of the statute it is charged with enforcing[,]" particularly when so many violations are alleged, and "[t]he agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." *Heckler*, 470 U.S. at 831–32. Plaintiff's invitation for this Court to supervise the "many factors" that the EEOC must consider in tens of thousands of investigations and reasonable cause determinations crosses a clear line between executive and judicial authority. *Texas*, 599 U.S. at 680. Separation of powers does not allow that kind of judicial review.

The core of Plaintiff's complaint is that the Commission closed charges with disparate impact claims, *see* Compl. (ECF No. 1) ¶ 56, including Plaintiff's, *id.* ¶ 73. The Prayer for Relief asks this Court to enjoin the Commission from "failing to investigate or conciliate charges pursuant to" the memo. *Id.* at 21. But it is well-established that "the refusal to prosecute cannot be the

---

[2]     *Available at* https://www.eeoc.gov/sites/default/files/2025-01/24-126_EEOC_2024_APR_508_1.16.25_508.pdf (last visited Oct. 29, 2025).

subject of judicial review." *ICC v. Locomotive Eng'rs*, 482 U.S. 270, 283 (1987); *see also Buckley v. Valeo*, 424 U.S. 1, 138 (1976) (civil enforcement decisions brought by the federal government are presumptively an exclusively Executive power). Plaintiff's complaint flies in the face of that precedent.

Perhaps if this was a scenario where the EEOC had adopted a policy so extreme that "the Executive has entirely ceased enforcing the relevant statutes" there *might* be an argument for standing. *See Texas*, 599 U.S. at 683. But the court need not bother with such a hypothetical scenario as the EEOC continues to investigate Title VII cases and in fact, did a complete investigation of Plaintiff's claim.

### B.    Plaintiff Has No Cognizable Injury.

Even if Plaintiff's bold theory (that was rejected by the Supreme Court) were viable, Plaintiff fails to allege an injury in fact. As an initial matter, insofar as Plaintiff anchors her claims in the ADEA, she has not suffered any injury at all because her discrimination charge arises under Title VII and Colorado state law, not the ADEA. Collins Decl. Ex. A, Compl. of Discrimination (ECF No. 2-4) at 5; *see also* PI Mem. (ECF No. 2-1) at 19 ("In May of 2023, Ms. Cross filed a charge of discrimination with the Colorado Civil Rights Division (CCRD), alleging disparate-impact-based sex discrimination under Colorado law and Title VII on behalf of herself and a class of female drivers."). Put simply, Plaintiff lacks standing to challenge anything related to the ADEA, as she has no cognizable injury linked to the Commission's handling of ADEA claims.

Plaintiff also lacks a concrete interest in challenging the Commission's actions. Regarding the dismissal of individual lawsuits, Plaintiff has no standing to challenge enforcement decisions when she is not the target of a potential enforcement action. *See Texas*, 599 U.S. at 677.

Plaintiff also lacks a concrete interest in the Commission's alleged failure to abide by the Commission's "statutory mandate under Title VII to investigate all charges of discrimination

within its jurisdiction."  Compl. (ECF No. 1) ¶ 9.  "Not all procedural-rights violations are sufficient for standing[.]"  *Ctr. for L. & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1157 (D.C. Cir. 2005).  Instead, the procedures in question must be "designed to protect some threatened concrete interest," *Lujan*, 504 U.S. at 578 n.8, specifically a "concrete interest of the plaintiff," *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 664 (D.C. Cir. 1996) (en banc) (citation modified).

Here, the investigation requirement is not designed to protect the interest of a charging party.  Congress endowed the Commission with enforcement powers to "vindicate the public interest in preventing employment discrimination," and the agency "is guided by [that] overriding public interest in equal employment opportunity," and not simply the interests of private parties. *Gen. Tel. Co. of Nw., Inc. v. EEOC*, 446 U.S. 318, 326 (1980) (citation modified).  That is precisely why, "once a charge is filed . . . the [Commission] is in command of the process," including management of the investigation.  *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 291 (2002).  During that time, the Commission is "the master of its own case" with the authority "to evaluate the strength of the public interest at stake" and to determine that the public interest does not justify a reasonable-cause finding.  *Id.*

The same statute also gives the EEOC "exclusive jurisdiction" over its case during the investigation, *id.*, and provides charging parties a role only through post-investigation conciliation processes or a private civil action, *see* 42 U.S.C. § 2000e-5(b), (f)(1).  There is no required role for a charging party during an investigation.  *See* 29 C.F.R. § 1601.15(a) ("The investigation of a charge shall be made by the Commission, its investigators, or any other representative designated by the Commission."); *id.* § 1601.15(b) (noting that "[a]s part of the Commission's investigation," it "may require" the charging party to provide a statement).

Plaintiff has also not alleged a cognizable injury in the outcome of the Commission's investigation. Plaintiff asserts injury in the Commission's dismissal of her disparate impact charge against Amazon, by denying her an investigation of her liking. Compl. (ECF No. 1) ¶¶ 66-75. Plaintiff, however, conflates the existence of an investigation with the sufficiency of an investigation and the Court's ability to review the latter. Plaintiff does not dispute that she received an investigation over the course of the two years that the matter was with the EEOC. *Id*. Moreover, the Commission in its notice-of-right to sue letter represented to Plaintiff that it completed an investigation, stating, "The investigation of your charge has concluded, and your charge is being administratively closed." Determination and Notice of Rights (ECF No. 2-4) at 31. Because the "EEOC represented in the . . . right-to-sue letter that it *did* investigate her claims . . . this Court has no authority to second-guess how it did so." *Dillard v. D.C. Coll. Access Program*, Civ. A. No. 23-0538 (TJK), 2024 WL 864198, at *3 (D.D.C. Feb. 29, 2024). Plaintiff even concedes as much, stating, "'the nature and extent of an EEOC investigation into a discrimination claim is a matter within the discretion of that agency.' *EEOC v. Keco Indus. Inc.*,748 F.2d 1097, 1100 (6th Cir. 1984)." PI Mem (ECF No. 2-1) at 15.

Confusingly, the Plaintiff cites a string of cases dissimilar to the facts at hand: *Martini* holds that "the 180–day period in 42 U.S.C. § 2000e–5(f)(1), under which the [Commission] may authorize private suits, [is] a mandatory waiting period." *Murthy v. Vilsack*, 609 F.3d 460, 464 (D.C. Cir. 2010) (citing *Martini v. Fed. Nat'l Mortg. Ass'n*, 178 F.3d 1336, 1347 (D.C. Cir. 1999)). Permitting earlier suits, the Court explained, ran counter to a "mandatory and unqualified duty" Title VII imposes on the Commission "to investigate charges." *Id*. (quoting *Martini*, 178 F.3d at 1346-47). Neither *Martini* nor the statute outlines what constitutes an investigation. Plaintiff readily admits, as she must, that she "is not entitled to any particular outcome from [a Commission]

investigation[.]" PI Mem (ECF No. 2-1) at 24.  The Commission's September 29, 2025, dismissal and right-to-sue letter (issued more than two years after Plaintiff in May 2023 filed a charge of discrimination) is well outside the waiting period *Martini* requires.  Compl. (ECF No. 1) ¶¶ 66, 73.

Plaintiff's reliance on *Occidental Life* and *Mach Mining* is likewise unavailing.  PI Mem. (ECF No. 2-1) at 15.  Those cases concern the Commission's Title VII obligations before the Commission itself may sue in district court.  "*Occidental Life* examined whether section 2000e–5(f)(1)'s 180–day provision functions as a statute of limitations on the [Commission's] power to bring a lawsuit where a complainant chooses not to sue after 180 days."  *Martini*, 178 F.3d at 1341; *see also Occidental Life Ins. Co. of California v. EEOC*, 432 U.S. 355, 357, 366 (1977).  And in *Mach Mining*, the Supreme Court held "that a court may review whether the [Commission] satisfied its statutory obligation to attempt conciliation before filing suit."  *Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 483 (2015).  Any discussion in those cases about the Commission's duties toward employees who filed a charge "is dictum."  *Martini*, 178 F.3d at 1341.

But even if the Commission mishandled the investigation, "no cause of action against the [Commission] exists for challenges to its processing of a claim."  *Smith v. Casellas*, 119 F.3d 33, 34 (D.C. Cir. 1997) (per curiam).  As the D.C. Circuit explained, "the remedy for any improper handling of a discrimination charge by" the Commission is an "aggrieved employee['s]" ability to bring "a Title VII action directly against his or her employer."  *Smith*, 119 F.3d at 34.  Other courts agree.  *See*, *e.g.*, *Scheerer v. Rose State College*, 950 F.2d 661, 663 (10th Cir. 1991) ("The circuits which have addressed the issue have uniformly held that no cause of action against the EEOC exists for challenges to its processing of a claim."); *Baba v. Japan Travel Bureau*, 111 F.3d 2 (2d Cir. 1997) (same).

Plaintiff also appears to assert an informational injury because she did not receive "any documents or data from Amazon as part of the [Commission's] investigation into [Plaintiff's] charge of discrimination." *Id*. ¶¶ 74, 75. To show informational standing, Plaintiff has the burden of establishing two elements: "(1) [she] has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) [she] suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." *Friends of Animals*, 828 F.3d at 992 (citation modified). Nonetheless, "[a]ny informational injury still must meet the traceability and redressability prongs of the traditional standing analysis." *Architects & Eng'rs for 9/11 Truth v. Raimondo*, Civ. A. No. 21-2365 (TNM), 2022 WL 3042181, at *3 (D.D.C. Aug. 2, 2022) (citing *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 25 (1998)), aff'd, No. 22-5267, 2023 WL 6439491 (D.C. Cir. Oct. 3, 2023).

Plaintiff does not argue that Title VII obliges the Commission to obtain specific evidence through an investigation and then to provide her with that evidence so she may pursue her claims in Court. *See generally* PI Mem. (ECF No. 2-1). For good reason: all that Title VII requires the Commission to do following a dismissal is to provide Plaintiff with a right-to-sue letter. Once in possession of that right-to-sue letter, Plaintiff is free to pursue "de novo proceedings" in federal court. *McDonnell Douglas*, 411 U.S. at 799. In short, Plaintiff has no right to an investigation that obtains specific evidence, and she cannot establish informational standing.

Finally, to the extent Plaintiff seeks to assert injuries of third parties not before the Court, Plaintiff fails to identify any dismissed claims other than her own. Compl. (ECF No. 1) ¶ 73. Even if she did, Plaintiff still would lack standing because she must "'assert [her] own legal interests, rather than those of third parties.'" *Goodman v. F.C.C.*, 182 F.3d 987, 992 (D.C. Cir. 1999) (citing *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979)). Plaintiff "cannot rest a

claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410 (1991).

### C.    Plaintiff's Injuries Are Not Redressable.

In addition to the failure to plead a viable injury in fact, Plaintiff's asserted injuries are not redressable by this Court.  For an injury to be redressable, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Lujan*, 504 U.S. at 561 (citation modified).  A plaintiff also must show that the Court has "the power to issue relief that is likely to redress the plaintiff's injury."  *Seed v. EPA*, 100 F.4th 257, 263 (D.C. Cir. 2024).

On the ADEA side, the Court cannot redress her injuries associated with it because Plaintiff does not claim such an injury.  On the Title VII side, Plaintiff's requested relief is an order dictating the procedures of the Commission to investigate certain charges of discrimination.  As discussed above, that request is not judicially cognizable.  And it is also not redressable.  "The power to decide when to investigate, and when to prosecute, lies at the core of the Executive's duty to see to the faithful execution of the laws."  *Cmty. for Creative Non-Violence v. Pierce*, 786 F.2d 1199, 1201 (D.C. Cir. 1986). Judicial authority to review the exercise of that power is "at its most limited" in normal settings.  *Id.*

Here it is "non-existent" because of the rule that a private citizen "has no interest in the prosecution or nonprosecution of another," yet Plaintiff asserts such an interest.  *Id.*; *see also Pinson v. Dep't of Just.*, 514 F. Supp. 3d 232, 242 n.2 (D.D.C. 2021) (noting that courts "typically cannot review" investigative decisions "at all").  It would be an "absurd and excessive extravagance" outside the Article III judicial power for this Court to dictate how the Commission must investigate and enforce Title VII.  *Mississippi v. Johnson*, 71 U.S. 475, 499 (1866) (citation modified).  In addition, as to Plaintiff's assertion that the lack of further investigation has prevented Plaintiff from obtaining certain information, that theory "requires speculation about how [the

Commission] might choose to exercise its enforcement discretion" regarding which investigations to pursue and which information to solicit. *Am. First Leg. Found. v. Greer*, 153 F.4th 1311, 1315 (D.C. Cir. 2025). "[C]ourts generally may not compel" how an agency exercises that discretion, meaning that Plaintiff's alleged informational injury, even if a cognizable injury in fact, is not redressable. *Id*. Plaintiff has no more standing to challenge the memo than does a party challenging a Department of Justice non-enforcement policy regarding specific criminal violations. *West v. Holder*, 60 F. Supp. 3d 197, 203 (D.D.C. 2015); *see also Wayte v. United States*, 470 U.S. 598, 607 (1985) (holding that a prosecutor's discretion "rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review").

To the extent Plaintiff seeks the memo's vacatur, PI Mot. (ECF No. 2) at 1; *see also* Compl. (ECF No. 1) at 20-21; Proposed Order (ECF No. 2-6) ¶¶ 1-2, that remedy would not redress Plaintiff's alleged injury because it would not cause the Commission to reopen her charge for further investigation. Nor does Plaintiff ask the Court for an order directing the Commission to reopen its investigation. *See* PI Mot. (ECF No. 2) at 1; Compl. (ECF No. 1) at 20-21; Proposed Order (ECF No. 2-6). Indeed, Plaintiff seeks entirely prospective relief, yet her allegations regarding the Commission's prior handling of her complaint "do[] nothing to establish a real and immediate threat" of recurrence. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983); *see also Worth v. Jackson*, 451 F.3d 854, 858 (D.C. Cir. 2006) ("While HUD's policies did allegedly injure Worth in the past, he seeks no relief for such injuries. . . . Instead, the basis for both his claims is that he intends to apply for new positions and promotions. . . . For standing purposes, then, we limit our inquiry to determining whether that prospective injury qualifies as an injury in fact." (citation modified)). Plaintiff here does not allege that she will bring another charge that would be subject to the memo, much less that the filing of such a charge is sufficiently imminent to give

rise to the need for the emergency preliminary relief she now seeks. *See generally* Compl. (ECF No. 1). And any allegation that the Commission now "routinely" dismisses certain charges based on the memo "falls far short of the allegations that would be necessary to establish a case or controversy between these parties." *Lyons*, 461 U.S. at 105. As such, "a favorable decision" from this Court would not "likely" redress Plaintiff's alleged injury. *Friends of Animals*, 828 F.3d at 991–92.

In sum, the Court starts from the presumption that it has no jurisdiction. *See Conf. of Cath. Bishops*, 770 F. Supp. 3d at 161. Here, Plaintiff has not even gone past the starting line in meeting her burden to establish that she has standing to bring her claims.

## II.    **Plaintiff Is Unlikely To Succeed on the Merits.**

### A.    **Plaintiff Has Not Stated a Cause of Action Under the APA.**

#### 1.    Plaintiff Does Not Identify a Final Agency Action.

Plaintiff must plead "an identifiable action or event" and "direct its attack against some particular agency action that causes [her] harm." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891, 899 (1990) (citation modified). "The APA is a remedial scalpel, used to excise 'circumscribed and discrete' improper actions." *Ass'n for Educ. Fin. & Policy, Inc. v. McMahon*, 786 F. Supp. 3d 13, 22 (D.D.C. 2025) (McFadden, J.) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004)). "But it is the wrong tool for plaintiffs hoping to bludgeon through broad 'programmatic' attacks that 'demand a general judicial review of an agency's day-to-day operations.'" *Id.* (quoting *Lujan*, 497 U.S. at 899). To be final, the challenged action must "mark the consummation of the agency's decisionmaking process" and must "be one by which rights or obligations have been determined, or from which legal consequences will flow[.]" *Bennett v. Spear*, 520 U.S. 154, 178 (1997).

Even assuming the memo marked "the consummation of the agency's decisionmaking process," it fails the second *Bennett* prong because the memo affects no legal rights. Changes to the charge-processing system are processing decisions antecedent to a reasonable-cause decision. A Commission "determination is not final agency action." *Borg-Warner Protective Servs. Corp. v. EEOC*, 245 F.3d 831, 836 (D.C. Cir. 2001).

*Georator Corp. v. EEOC*, 592 F.2d 765 (4th Cir. 1979), is instructive. There, an employer sought judicial review of the Commission's determination that there was reasonable cause to believe a charge filed against the employer was true. *See id*. 767. The court rejected the employer's argument that the reasonable-cause determination was a final agency action under 5 U.S.C. § 704. Although *Georator* predated the *Bennett* test, the court noted that "the touchstone of [APA] finality" was "the fixing of obligations or legal relationships." *Id.* at 768. "No such finality exists with respect to the [Commission's] determination of reasonable cause" because that determination "can fix no obligation nor impose any liability." *Id.* Rather, "[i]t is merely preparatory to further proceedings" in the form of a lawsuit against the employer. *Id.* Only then will "the issue of discrimination . . . come to life[.]" *Id.* Simply put, the Commission's determination of reasonable cause "has no effect until either the Commission or the charging party brings suit in district court." *Id.* at 769.

The D.C. Circuit has endorsed *Georator*. *See Borg-Warner*, 245 F.3d at 836. Plaintiff merely alleges that the Commission has determined that it will not pursue disparate impact investigations. But that determination carries no legal ramifications. As *Georator* observed, a reasonable-cause determination is just a "preparatory" step. 592 F.2d at 768. No liability or rights are decided until either (1) the employee sues the employer, if the Commission does not believe there is reasonable cause for the charge; or (2) the Commission does believe there is reasonable

cause and sues the employer. *Id.* The decision "merely informed [Plaintiff] that [s]he had a right to bring a complaint." *Borg-Warner*, 245 F.3d at 836. "[O]nly the district court may fix liability," however. *Ward v. EEOC*, 719 F.2d 311, 313-14 (9th Cir. 1983).

Because the eventual decision regarding reasonable cause determines no rights, neither do the intermediate steps leading to that decision, such as "negligence or inaction in the internal processing of a [charge]." *Id.* at 313. For that reason, how the Commission investigates and processes charges of discrimination are not final agency actions under the APA. *See Borg-Warner*, 245 F.3d at 836; *Georator*, 592 F.2d at 768; *Ward*, 719 F.2d at 313–14.

2.    Plaintiff Has An Adequate Alternative Remedy in a Court.

The APA is not a Swiss army knife that can be adopted to bring any claim in court. Instead, review under the APA is available only where "there is no other adequate remedy in a court." 5 U.S.C. § 704. "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action," *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). "[T]he alternative remedy need not provide relief identical to relief under the APA, so long as it offers relief of the same genre." *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (citation modified). "'[W]here a statute affords an opportunity for de novo district-court review[,]" § 704 precludes APA review of agency action. *Id.* (quoting *El Rio Santa Cruz Neighborhood Health Ctr. v. HHS*, 396 F.3d 1265, 1272 (D.C. Cir. 2005).

Here, the adequate alternative remedy is the private right of action afforded by Title VII. *See* 42 U.S.C. § 2000e-5(f)(1). That right of action entitles Plaintiff to sue Amazon directly. And she will receive "[d]e novo consideration" of her discrimination claims as part of that lawsuit. *Chandler v. Roudebush*, 425 U.S. 840, 844 (1976). That is game, set, match.

That is because a Title VII direct action is an adequate remedy precluding APA review of alleged inadequacies in the processing of a charge by the Commission. *See Ward*, 719 F.2d at 314

(Title VII right of action was "an adequate remedy in a court for the alleged shortcomings in the EEOC's handling of the plaintiffs' charges" (citation modified)); *Nielsen v. Hagel*, 666 F. App'x 225, 231 (4th Cir. 2016) (Title VII cause of action was adequate alternative remedy for challenge of "procedural errors by the agency's EEO office," and that same principle applied "irrespective [of] whether the alleged discriminating entity is a private party or a governmental agency").

These authorities reflect that "Congress intended the private right of action provided for in section 706(f)(1) of the Act (42 U.S.C. § 2000e-5(f)(1)) . . . to serve as the remedy for any improper handling of a discrimination charge by the EEOC." *Smith*, 119 F.3d at 34. Although Plaintiff might believe she lacks certain pre-suit information, she can still bring a lawsuit and seek discovery on her claims. Therefore, she has no argument that she lacks an alternative remedy at law.

3.    <u>The Commission's Enforcement Decisions are Committed to Agency Discretion by Law.</u>

In addition to identifying a final agency action, Plaintiff "must clear the hurdle of § 701(a)," *Heckler*, 470 U.S. at 828, which provides that APA review is unavailable if "agency action is committed to agency discretion by law," 5 U.S.C. § 701(a)(2). That provision forecloses judicial review in at least two circumstances. First, review is unavailable if the challenged agency action is of a kind "traditionally regarded as committed to agency discretion," including various categories of discretionary judgments that "require[] 'a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise.'" *Lincoln v. Vigil*, 508 U.S. 182, 192-93 (1993) (quoting *Heckler*, 470 U.S. at 831). Second, section 701(a)(2) applies if the "relevant statute" underlying a plaintiff's APA challenge "is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Id.* at 191 (quoting *Heckler*, 470 U.S. at 830).

The Supreme Court has identified various types of agency decisions for which review is "general[ly] unsuitab[le]" because they implicate judgments about policy or resource allocation within the core of an agency's discretion and expertise. *Heckler*, 470 U.S. at 831. Chief among these, section 701(a)(2) generally bars review of agency decisions to initiate or forego enforcement actions. *See id.* at 831–32; *El Puente de Williamsburg, Inc.-Enlace Latino de Accion Climatica, Inc. v. FERC*, 152 F.4th 211, 213-14 (D.C. Cir. 2025) (explaining that "decisions declining to take enforcement action presumptively" are exempt from judicial review under the APA). Like other discretionary contexts, courts refuse to review enforcement decisions because "an agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise." *Heckler*, 470 U.S. at 831. "The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." *Id.* at 831-32.

Plaintiff's claims challenge actions undertaken as part of the Commission's enforcement discretion. Plaintiff complains about the Commission's investigation processing procedures. But Title VII does not specify how the Commission should determine that there is reasonable cause underlying a particular charge. Rather, the Commission is "the master of its own case." *Waffle House*, 534 U.S. at 291. No provision requires the Commission to adopt a particular investigative approach. "As to these points, the statute is silent. Therefore, there is no law to apply" to judge how the Commission chooses to exercise its prosecutorial discretion regarding charges submitted by any charging parties. *Sierra Club v. Larson*, 882 F.2d 128, 132 (4th Cir. 1989).

The Commission must determine the threshold for what qualifies as a potentially meritorious charge and how many resources to devote to each type of charge. That is a policy-laden question that this Court cannot answer for the Commission without some statutory standard from Congress. Seeing none, how the Commission administers its investigatory system is

committed to the Commission's discretion.  Accepting any other argument "could lead to court intervention in all decisions not to pursue further action after preliminary investigations," a foray of reviewability that the separation of powers would not countenance.  *Larson*, 882 F.2d at 133. And although Plaintiff alleges she was deprived of various Commission procedures, Title VII does not dictate how the Commission should "discriminate among issues or cases it will pursue." *Heckler*, 470 U.S. at 833.  Thus, the charges that the Commission chooses to pursue rest in the Commission's discretion.

The same is true for the Commission's decision to dismiss lawsuits.  *See* Compl. (ECF No. 1) ¶ 73.  Such dismissal was an exercise of the Commission's discretion over which enforcement actions to bring.  "[T]he decision not to bring an administrative enforcement action is committed to agency discretion by law and therefore unreviewable." *Citizens for Resp. and Ethics in Wash. ("CREW") v. Fed. Elec. Comm'n*, 993 F.3d 880, 888 (D.C. Cir. 2021) (citation modified).  A contrary conclusion would "deprive the Executive Branch of its historical prerogative to decide which cases should go forward in the name of the United States." *Swift v. United States*, 318 F.3d 250, 253 (D.C. Cir. 2003).

Plaintiff emphasizes repeatedly that the memo runs counter to the Commission's supposed mandatory duty to provide a certain level of investigation.  *See, e.g.*, Compl. (ECF No. 1) ¶¶ 5, 6, 9.  But the allegations do not support that.  Moreover, determining whether a charge is one of disparate impact itself requires an investigation in that Commission staff reviews the contents of the charge before determining how to proceed.  How else will staff know that the charge is suitable for dismissal?  Moreover, the memo permits staff to continue an investigation on alternative liability theory grounds.  PI Mot. Ex. 3, memo (ECF No. 2-3) at 2.  Thus, there is no question that the Commission is meeting a duty to investigate because, as Plaintiff readily admits, she "is not

entitled to any particular outcome from [a Commission] investigation[.]"  PI Mem. (ECF No. 2-1) at 24.

To the extent Plaintiff argues the Commission's investigation is insufficient, that involves considerations this Court is ill-suited to question. *See Heckler*, 470 U.S. at 831.  In much the same way that the Supreme Court could not "impose extra procedural requirements" on the Commission's duty to seek conciliation, so too this Court cannot dictate the Commission's investigative procedures without congressional authority. *Mach Mining*, 575 U.S. at 492.  "Such judicial review extends too far" and contradicts the "abundant discretion the law gives" the Commission to investigate charges. *Id.* at 492, 495.

If the Commission's activities into Plaintiff's claim do not qualify as an "investigation", the "shall" investigate language in 42 U.S.C. § 2000e-5(b) does not impose a mandatory duty to investigate all incoming charges in a certain manner.  Given the "deep-rooted nature of law enforcement discretion," *Texas*, 599 U.S. at 682, the use of "shall" in a statute "is not sufficient" to displace the Commission's traditional enforcement discretion, *Sierra Club v. Jackson*, 648 F.3d 848, 856 (D.C. Cir. 2011).  As the Supreme Court has explained, laws granting authority to government actors frequently "use the word 'shall' to authorize, but not to require . . . action." *De Martinez v. Lamagno*, 515 U.S. 417, 432 n.9 (1995) (pointing to examples in the Federal Rules). The Supreme Court has held multiple times that a statutory "shall" did not displace an agency's enforcement discretion.  In *Texas*, for example, the Court refused to "enter appropriate orders requiring additional arrests" despite statutory language that the Federal Government "shall take into custody" certain noncitizens.  599 U.S. at 682; *see also Town of Castle Rock v. Gonzales*, 545 U.S. 748, 761 (2005) (statutory language that police officers "shall use every reasonable means to enforce a restraining order" did not displace traditional enforcement discretion).

So too here.  The use of "shall" in Title VII cannot displace the Commission's traditional enforcement discretion to "decide when to investigate."  *Cmty. for Creative Non-Violence*, 786 F.2d at 1201.  This grant of discretionary authority makes sense given "the nature of the administrative action at issue."  *CREW*, 993 F.3d at 890 (citation modified).  It is implausible that Congress meant to require an equal, comprehensive investigation into every charge filed with the Commission given the volume of those charges.  In 2024 alone, the Commission received more than 88,000 charges.  *See* Annual Report at 6.  Yet Congress has equipped the Commission with limited resources.  "It is simply not plausible to suggest that such a limited body" would be able to perform its duty if it "were forced to conceive of each and every [investigation] as a point of exposure to litigation[.]"  *Am. Fed'n of Gov't Emps v. Off. of Special Counsel*, 1 F.4th 180, 190 (4th Cir. 2021).  Indeed, Congress acknowledged the Commission would not reach particular investigatory milestones on every charge by allowing a charging party to receive notice of the right to sue if the Commission has not filed a lawsuit or entered into a conciliation agreement within 180 days.  *See* 42 U.S.C. § 2000e-5(f)(1).  At the very least, requiring any particular degree of investigation into each charge of discrimination would diminish the Commission's effectiveness by diverting agency resources away from the most meritorious charges.

The statutory language reinforces that conclusion because it recognizes that the Commission determines which cases warrant such steps.  For instance, only where the Commission finds reasonable cause does law provide that the Commission "shall endeavor" to eliminate an unlawful practice via conciliation, 42 U.S.C. § 2000e-5(b), and both the predicate determination and the manner of "endeavor[ing]" necessarily are subject to agency discretion.  Similarly, the ADEA recognizes such agency discretion, providing only that the agency "shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and

persuasion," 29 U.S.C. § 626(d)(2), an "informal" process that necessarily involves the exercise of agency discretion. Any reading of such language that would constitute a Congressional abridgement of agency discretion would raise significant constitutional questions and would draw the Court into management of the agency's decisionmaking. *See Heckler*, 470 U.S. at 834 ("The danger that agencies may not carry out their delegated powers with sufficient vigor does not necessarily lead to the conclusion that courts are the most appropriate body to police this aspect of their performance."). The Court must avoid any such reading where, as here, there is an alternative reading that recognizes the agency's broad discretion and thus does not require the agency to "pass on questions of constitutionality." *Spector Motor Serv., Inc. v. McLaughlin*, 323 U.S. 101, 105 (1944); *accord United States v. Safarini*, 257 F. Supp. 2d 191, 199 (D.D.C. 2003) (quoting *Harris v. United States*, 536 U.S. 545, 555 (2002)) ("The canon of constitutional avoidance holds that when 'a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter.'").

Plaintiff tries to shoehorn her claims into the APA but does not come close to meeting its requirements for a cause of action. As such, her claims fail on that ground alone.

**B. Plaintiff Cannot Succeed on the Substantive Merits.**

1. <u>The EEOC fulfilled its statutory mandate in Plaintiff's case.</u>

Plaintiff cannot succeed on any of her APA claims because the Commission in fact investigated Plaintiff's charge. Following receipt, the Commission reviewed Plaintiff's charge. As Plaintiff acknowledges, "[a]s part of the [Commission's] investigation, Amazon filed a short position statement, and [Plaintiff] provided a rebuttal to the position statement." Compl. (ECF No. 1) ¶ 69. The Commission interviewed Plaintiff on January 14, 2025. *Id*. ¶ 70. The Commission's investigator and Plaintiff's attorney discussed the case on September 24, 2025. *Id*.

¶ 71.  That investigation of Plaintiff's charge fulfilled any Commission duty to "make an investigation" of a charge. 42 U.S.C. § 2000e-5(b).  As discussed previously, the statute does not specify the type of investigation an individual charge or category of charges must receive.

The outcome is also consistent with the statute, which provides that if "after such investigation" the Commission determines it is unable to find reasonable cause to believe the charge is true, the Commission "shall dismiss the charge and promptly notify" the charging party and the employer.  *Id.*  The Commission administratively closed the matter and issued a right-to-sue notice on September 29, 2025, Compl. (ECF No. 1) ¶ 73, which the regulations make clear "does not mean the claims in the charge have no merit," 29 C.F.R. § 1601.19.  Plaintiff may be disappointed by that outcome.  But she points to nothing in Title VII requiring that the Commission continues investigating until it reaches Plaintiff's alternative, desired result.  Plaintiff concedes as much.  PI Mem. (ECF No. 2-1) at 24.  And nothing about that administrative closure is a comment on the merits that would affect any private action she may file.

2.    Plaintiff's Substantive APA Claims Fail.

Plaintiff is also unlikely to succeed on the merits of her APA claims.  Substantively, the Commission's decision to deprioritize investigations of disparate impact claims is neither contrary to law, Compl. (ECF No. 1) ¶¶ 76-81, nor arbitrary and capricious, *id.* ¶¶ 82-87.  At its core, the memo reflects the EEOC's exercise of sound enforcement discretion.  *Heckler*, 470 U.S. at 831.

The Commission must allocate its limited number of investigators to address the approximately 80,000 to 90,000 charges the Commission receives annually.  Annual Report at 6 ("The EEOC received 88,531 new charges of discrimination in fiscal year 2024 alone, reflecting a more than 9% increase over the number of charges filed in fiscal year 2023.").  And only a very small number of charges result in a reasonable cause finding: "In fiscal year 2024, the agency resolved 18% of charges with outcomes favorable to the charging party, also known as merit factor

resolutions." *Id*. at 38.  For the same period, the Commission found "reasonable cause" in only 1.8% of Title VII charges (the main statute addressing disparate impact).  Table E4a.  As discussed above, nothing in Title VII curtails the Executive's authority to set enforcement priorities.

This is especially true here because the memo implements the President's directive announcing "the policy of the United States to eliminate the use of disparate-impact liability in all contexts to the maximum degree possible to avoid violating the Constitution, Federal civil rights laws, and basic American ideals."  Exec. Order 14,281: Restoring Equality of Opportunity and Meritocracy § 2, 90 Fed. Reg. 17,537, 17,537 (Apr. 23, 2025).  That Executive Order directs federal agencies to "deprioritize enforcement of all statutes and regulations to the extent they include disparate-impact liability[.]"  *Id*. § 4.  Plaintiff has not challenged the validity of Executive Order 14,281.  *See generally* Compl. (ECF No. 1).  Nor can she because "presidential actions" are not subject to APA review.  *Franklin v. Massachusetts*, 505 U.S. 788, 800-01 (1992); *see also Severino v. Biden*, 71 F.4th 1038, 1042 (D.C. Cir. 2023) (explaining that a court may not enjoin the President in the performance of his official duties).

### 3.    Plaintiff Does Not Identify Any Procedural APA Violations.

Plaintiff's remaining two claims assert procedural APA violations.  *See* Compl. (ECF No. 1) ¶¶ 88-103.  Count III asserts that the memo is a "rule" and that the Commission lacks authority to issue "substantive or legislative rules under Title VII."  *Id*. ¶¶ 90, 92.  Count IV claims that the Commission issued the memo without observing APA notice-and-comment procedures and that it issued the rule without a quorum.  *Id*. ¶¶ 101, 102.

Plaintiff's assertion that the memo should have been subject to notice-and-comment procedures because it affects substantial private rights and interests, PI Mem. (ECF No. 2-1) at 22, is wrong.  As discussed above, the memo affects no legal rights.  To the extent it introduces

changes to the charge-processing system, such decisions are antecedent to a reasonable-cause decision, and a legitimate exercise of prosecutorial discretion. *See Borg-Warner*, 245 F.3d at 836.

Plaintiff also appears to assert that memo was issued unlawfully because was not adopted pursuant to a "quorum of three commissioners." PI Mem. (ECF No. 2-1) at 22. Plaintiff does not develop that argument. "This Court need not . . . address undeveloped arguments[.]" *Robinson v. Farley*, 264 F. Supp. 3d 154, 162 (D.D.C. 2017). "It is plaintiff's task to spell out his arguments squarely and distinctly." *Raines v. Dep't of Just.*, 424 F. Supp. 2d 60, 66 n.3 (D.D.C. 2006) (citation modified). "[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived." *Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013). Regardless, it fails on the merits.

Plaintiff also asserts that the memo ignores "serious reliance interests." PI Mem. (ECF No. 2-1) at 18. Many individuals, she says, rely on the results of the Commission's investigations, "including the statistical analyses[.]" *Id.* But Plaintiff points to no statutory or regulatory entitlement to files created by the Commission during an investigation. Nor has alleged that the Commission creates statistical analyses in every Title VII case such that every claimant can expect to receive a statistical analysis at the conclusion of the Commission's investigation. In fact, over the past three fiscal years the Commission administratively closed approximately twenty percent of Title VII charges.[3] "But unidentified and unproven reliance interests are not a valid basis on which to undo agency action. Instead, the harm occasioned must be specifically identified, reasonably incurred, and causally tied to the delay." *Solenex LLC v. Bernhardt*, 962 F.3d 520, 529

---

[3]    Table E4a: Title VII Charge Receipts and Resolutions by Type of Resolution, *available at* https://www.eeoc.gov/sites/default/files/2025-02/Table_E4a._Title_VII_Charge_Receipts_and _Resolutions_by_Type_of_Resolution_FY_1997_-_FY_24.xlsx (last visited Oct. 29, 2025) ("Table E4a").

(D.C. Cir. 2020).  As such, Plaintiff cannot show "actual harm to specific reliance interests" caused by the memo.  *Id*.  Her speculation and "assumptions are not evidence."  *Id*.  To the contrary, any such "reliance interest[ does] not render the [memo] arbitrary or capricious."  *Scotts Value Band of Pomo Indians v. Burgum*, Civ. A. No. 25-0958 (TNM), 2025 WL 3034885, at *11 (D.D.C. Oct. 30, 2025).  In any event, Plaintiff can fully vindicate her interests in obtaining evidence she desires via civil discovery.

Finally, the Commission did not overstep its authority by issuing the memo without a vote by a quorum of commissioners.  Title VII confers responsibility to the Chair for the "administrative operations of the Commission," which are the subject of the memo.  *See* 42 U.S.C. § 2000e-4(a).  Because Plaintiff has not alleged a statutory violation, much less a "clear, specific statutory command," she has not stated a cognizable *ultra vires* claim or otherwise shown the Commission's issuance of the memo to be unlawful.  *Fresno Cmty. Hosp. and Med. Ctr. v. Cochran*, 987 F.3d 158, 162 (D.C. Cir. 2021).

## III.    <u>The Remaining Preliminary Injunction Factors Tilt in Favor of the Government</u>

### A.    **Plaintiff Has Not Established Irreparable Harm.**

Plaintiff's asserted irreparable harm is that she is "force[d] [] [] to bring her Title VII claim in court in less than three months without the benefit of a full EEOC investigation."  PI Mem. (ECF No. 2-1) at 32 (emphasis omitted).  In effect, Plaintiff asserts that before she can vindicate her discrimination claim she would rather wait months or years on top of the two years that already have passed.  Plaintiff's assertions are counterintuitive to say the least.

Regardless, the D.C. Circuit "has set a high standard for irreparable injury."  *Chaplaincy*, 454 F.3d at 297.  And "while standing and irreparable harm overlap, they are far from the same."  *Santos v. Collins*, Civ. A. No. 24-1759 (JDB), 2025 WL 1823471, at *6 (D.D.C. Feb. 26, 2025).  The moving party must demonstrate an injury that is "'both certain and great'" and "of such

*imminence* that there is a 'clear and present' need for equitable relief to prevent irreparable harm."
*Id.* (emphasis in original) (quoting *Chaplaincy*, 454 F.3d at 298). The injury must "be beyond remediation," and thus where, as here, the "possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, [such possibility] weighs heavily against a claim of irreparable harm." *Clevinger v. Advoc. Holdings, Inc.*, 134 F.4th 1230, 1234 (D.C. Cir. 2025) (citation modified). Plaintiff has the burden to put forth sufficient evidence to satisfy this high standard. "The movant cannot simply make 'broad conclusory statements' about the existence of harm. Rather, [the movant] must 'submit[ ] . . . competent evidence into the record . . . that would permit the Court to assess whether [the movant], in fact, faces irreparable harm[.]'" *Aviles-Wynkoop v. Neal*, 978 F. Supp. 2d 15, 21 (D.D.C. 2013) (quoting *Cornish v. Dudas*, 540 F. Supp. 2d 61, 65 (D.D.C. 2008)). Plaintiff's claim hardly meets that standard.

Plaintiff's assertion that she must bring a lawsuit "without the benefit of a complete and lawful EEOC investigation," PI Mem. (ECF No. 2-1) at 23, also is speculative at best. To the extent she asserts a desire to access specific types of evidence, such as "information about Amazon's policies and practices" or those policies' "effects on other female employees," Plaintiff's assertions are based on speculation that the Commission would obtain such information. Plaintiff again points to nothing in the statute requiring the Commission to do so. In any event, Plaintiff's alleged injury is fully redressable absent a preliminary injunction because Plaintiff is now free to pursue "de novo proceedings" in court for her claims. *See McDonnell Douglas*, 411 U.S. at 799; *see also* 42 U.S.C. § 2000e-5(f)(1) (providing private right of action to vindicate Title VII rights). As part of that litigation, Plaintiff can take full advantage of the civil discovery tools to build her case. *See* Fed. R. Civ. P. 26-37. Plaintiff does not suffer any harm, let alone irreparable

harm, merely because she is unable to conscript federal law enforcement resources to build her case for her.

**B.      The Balance of Equities Tilts Toward the Commission.**

The third and fourth requirements for issuance of a preliminary injunction—the balance of harms and whether the requested injunction will disserve the public interest—"merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. These factors tilt decisively against granting a preliminary injunction here. *See Kim v. FINRA*, 698 F. Supp. 3d 147, 172 (D.D.C. 2023) ("[A] court can deny preliminary injunctive relief solely on the balance of equities and public interest factors even in cases, like this, involving constitutional claims."), appeal dismissed, No. 23-7136, 2025 WL 313965 (D.C. Cir. Jan. 27, 2025). Granting a preliminary injunction would disrupt the Commission's implementation of the President's directives, which Plaintiff here does not challenge. The public has an interest in permitting the Executive Branch, at the President's direction, to take decisive action when it comes to setting his policy priorities, and for the Commission to determine how to effectuate those policies. Entering any sort of preliminary relief would displace and frustrate the President's decision about how to best address those issues. *Heckler*, 470 U.S. at 831–32. As discussed above, Plaintiff will not suffer any harm, let alone irreparable harm, from the denial of her request for preliminary relief, because she has not shown that her harm could not otherwise be mediated later, nor has she asserted harms on behalf of parties not before this Court. Moreover, the Commission would suffer harm from having to reallocate its limited resources, and Plaintiff's theory would open the door to nearly any charging party dissatisfied with the extent or outcome of an EEOC investigation coming into court to force a more extensive, taxpayer-funded investigation by the Commission.

## C.    Any Injunctive Relief Should Be Limited Solely to Plaintiff.

If the Court concludes that Plaintiff is entitled to a preliminary injunction, the relief granted "must be narrowly tailored to remedy the specific harm shown," *Neb. Dep't of Health & Hum. Servs. v. Dep't of Health & Hum. Servs.*, 435 F.3d 326, 330 (D.C. Cir. 2006) (citation modified), and "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiff[]," *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citation modified).  Affording Plaintiff the type of "universal injunction" she seeks here "falls outside the bounds of a federal court's equitable authority." *Trump v. CASA, Inc.*, 606 U.S. 831, 847 (2025). As such, any preliminary injunction should do no more than necessary to alleviate the irreparable harm to the specific plaintiff whom the Court finds to have established such irreparable harm.

Plaintiff also asks the Court to toll "the deadlines associated with any right-to-sue notices" issued pursuant to the memo, order the Commission to publicly identify "all affected charges," and order the Commission to alert to this lawsuit "all individuals with charges of discrimination that were administratively closed" pursuant to the memo.  PI Mot. (ECF No. 2) at 1; *see also* Compl. (ECF No. 1) at 20-21; Proposed Order (ECF No. 2-6) ¶¶ 3-5.  But the Court cannot issue such breathtaking injunctive relief without the participation in this lawsuit of every individual whose charge may have been dismissed because a "universal injunction . . . falls outside the bounds of a federal court's equitable authority under the Judiciary Act." *CASA*, 606 U.S. at 847. Extending relief that is either broader in substance or scope violates the foundational Article III principle that judicial remedies "must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 585 U.S. 48, 73 (2018).  Doing so also risks "the adjudication of rights which those not before the Court may not wish to assert" or to choose "the most effective advocate of the rights at issue is present to champion them." *LaRoque v. Holder*, 650 F.3d 777, 782-83 (D.C. Cir. 2011)

(citation modified).  For example, some third parties may wish to proceed with judicial de novo review.

To the extent Plaintiff seeks the disclosure of those charges, that request is improper under Title VII's disclosure proceedings.  42 U.S.C. § 2000e-8(e).  The EEOC is prohibited from public disclosure "in any matter whatever" of "any information obtained" under threat of criminal penalties.  *Id*.  Even with redactions or submitting the information under seal, making public in any manner other charges—including just to Plaintiff and her lawyers—could engender criminal liability for EEOC officials.  The EEOC is only authorized to disclose information after it initiates litigation or with the parties' consent, which is not a decision Plaintiff or her lawyers can make.  Even if the Commission might disclose the "investigative information in [Plaintiff's] file to [Plaintiff], nothing in the statute or its legislative history reveals any intent to allow the Commission to reveal to [Plaintiff] information in the files of other charging parties who have brought claims against the same employer" or other employers.  *EEOC v. Associated Dry Goods Corp.*, 449 U.S. 590, 603 (1981).

Plaintiff might argue she brings claims under Section 706 of the APA to vacate the memo, Compl. (ECF No. 1) ¶¶ 76-103, and that *CASA* did not address "the distinct question whether the Administrative Procedure Act authorizes federal courts to vacate federal agency action."  *CASA*, 606 U.S. at 847 n.10.  That *CASA* arose under the Judiciary Act is of no moment because Congress enacted the APA against a background rule that statutory remedies should be construed in accordance with "traditions of equity practice."  *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944).  "*CASA* provides fresh guidance regarding the equitable powers of federal courts."  *Doe v. Trump*, 142 F.4th 109, 112 (1st Cir. 2025); *see also Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 995 (9th Cir. 2025) ("Though the Supreme Court's recent *Trump v. CASA, Inc.* decision explicitly

declined to extend its holding to the APA context, its complete-relief principle for crafting injunctive relief provides some useful guidance for crafting interim equitable relief in this [APA] case." (citation modified)).  And the D.C. Circuit recently applied *CASA*'s limiting principle in APA cases.  *See Climate United Fund v. Citibank, N.A.*, --- F.4th ---, No. 25-5122, 2025 WL 2502881, at *13 (D.C. Cir. Sep. 2, 2025); *Global Health Council v. Trump*, 153 F.4th 1, 46 n.10 (D.C. Cir. 2025) (Pan, J., dissenting) (citing *CASA* to agree that an injunction may not be "broader than necessary to provide complete relief to the plaintiff").

At its core, *CASA* stands for the proposition that courts lack the authority to issue universal injunctions because such authority "likely exceed[s] the equitable authority that Congress has granted to federal courts."  *CASA*, 606 U.S. at 837.  In other words, the Judiciary Act of 1789 granted American courts "only those sorts of equitable remedies 'traditionally accorded by courts of equity' at our country's inception."  *Id.* at 841 (quoting *Grupo Mexicano de Desarrollo, S. A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999)).  "Neither the universal injunction nor any analogous form of relief was available in the High Court of Chancery in England at the time of the founding."  *Id*. at 842.

When it was adopted in 1946, the APA codified "the common law standard for review of agency action."  *U.S. Capitol Police v. Off. of Compl.*, 908 F.3d 748, 756 (Fed. Cir. 2018).  Under that common law, a court could disregard an unconstitutional statute to resolve the dispute between the parties before the court, but it did not give courts "per se [power] to review and annul acts of Congress on the ground that they are unconstitutional."  *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923).  Put simply, modern courts' authority to issue equitable remedies is no greater than that of courts of equity at the founding, and neither at the time of the Judiciary Act nor at the time of the APA did a court have the authority to issue relief to parties not before it.

Properly understood, then, Section 706(2)'s instruction to "set aside" unlawful agency action does not dictate any particular remedy. *See* Samuel L. Bray, *Multiple Chancellors: Reforming the National Injunction*, 131 Harv. L. Rev. 417, 452 (2017). When a court declines to apply an agency action to the case before it on the ground that the action is unlawful, it may issue relief to give effect to that decision. But a different provision, Section 703, points outside the APA for the available remedies. As Section 703 recognizes, some cases are governed by a "special statutory review proceeding," 5 U.S.C. § 703, which may authorize a court to vacate an order or rule, *see* Harrison 39-40; *see also*, *e.g.*, 28 U.S.C. § 2342. Where no such proceeding is available, Section 703 provides that "[t]he form of proceeding" under the APA is a traditional "form of legal action," such as "actions for declaratory judgments or writs of prohibitory or mandatory injunction." 5 U.S.C. § 703.

Plaintiff asks the Court to vacate the memo and issue relief to unidentified third parties, but that universal relief runs head-on into the bedrock principle that "suits in equity were brought by and against individual parties, and the . . . remedies were generally party specific." *CASA*, 606 U.S. at 842 (citation modified). In other words, reading Section 706(2) to authorize the universal relief Plaintiff seeks in this case cannot be squared with the Supreme Court's reasoning in *CASA* or the text and history of the APA. For Plaintiff to obtain the relief she seeks, each individual whose charge the Commission may have terminated because of the memo must be a plaintiff in a lawsuit. And here they are not. Plaintiff can only seek relief for herself.

## IV.    **Any Preliminary Injunction Should Be Stayed.**

To the extent the Court issues any injunctive relief, the Commission respectfully requests that such relief be stayed pending the disposition of any appeal that is authorized by the Solicitor General, or, at a minimum, administratively stayed for a period of seven days to allow the United States to seek an emergency, expedited stay from the Court of Appeals if an appeal is authorized.

## V.    <u>The Court Should Order that Plaintiffs Post a Bond as a Condition of Preliminary Relief.</u>

The Commission also respectfully requests that any injunctive relief be accompanied by a bond.  "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  A bond is appropriate here given that the requested preliminary relief would potentially require the Executive to spend money and resources that may not be recouped once distributed and employed.

*    *    *

## CONCLUSION

Plaintiff rushed into court without a cognizable injury, without a cause of valid action, and without any chance of success on the merits.  And Plaintiff asks the court to take the audacious step of providing similar relief to others who are not before the court (whether they want it or not).  If she wishes to vindicate her underlying discrimination claim she is free to do so through a private right of action under Title VII.  But her claims do not belong in this Court.  The Court should not entertain Plaintiff's meritless requests for a preliminary injunction and a stay of the memo.  Those motions should be denied.

Dated: October 31, 2025
      Washington, DC

                Respectfully submitted,

                STANLEY E. WOODWARD, JR.
                Associate Attorney General

                ABHISHEK KAMBLI
                Deputy Associate Attorney General

                JEANINE FERRIS PIRRO
                United States Attorney

                By: _____ */s/ Peter C. Pfaffenroth* _____
                    PETER C. PFAFFENROTH
                    D.C. Bar #496637
                    DIMITAR GEORGIEV
                    D.C. Bar #1735756
                    Assistant United States Attorneys
                    601 D Street, NW
                    Washington, DC 20530
                    202 252-2500

                *Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LEAH CROSS,

        Plaintiff,

     v.

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION, et al.,

        Defendants.

Civ. A. No. 25-3702 (TNM)

## [PROPOSED] ORDER

UPON CONSIDERATION of Plaintiff's motion for a preliminary injunction and stay, the opposition thereto, any reply, the hearing held in this matter, and the entire record herein, it is hereby

ORDERED that Plaintiff's motion is DENIED.


SO ORDERED:


_____
Date                                                                        TREVOR N. MCFADDEN
                                                                               United States District Judge